D. C. MORROW, Respondent, v. NATIONAL LIFE ASSOCIATION OF DES MOINES, IOWA, a Corporation, Appellant.

Springfield Court of Appeals, July 10, 1914.

1. INSURANCE: Life Policies: Assessment Plan. Provisions of life insurance policy examined and decision reached that the company was operating under the assessment plan. (Sec. 6950, *et seq.*, R. S. 1909.)

2. ————: Vexatious Refusal to Pay: Attorney's Fees and Damages: Not Applicable to Assessment Plan Companies. Sec. 7068, R. S. 1909, as amended by laws 1911, p. 282, authorizing recovery of damages and attorneys fees for vexatious refusal to pay a loss under a policy of insurance, examined in connection with Sec. 6959, R. S. 1909, and *held* not applicable to companies operating on the assessment plan.

3. ————: Assessment Plan: Insurable Interest: Statutory Provision. A company doing business under the article concerning assessment plan insurance cannot issue a policy upon the life of a person in which the beneficiary named has no insurable interest and a policy cannot be assigned to any such person. (Sec. 6956, R. S. 1909.)

4. ————: Insurable Interest: Creditor and Debtor. A creditor has an insurable interest in the life of his debtor and can insure the life of such debtor without his consent; but such interest is limited to the amount of the debt.

5. ————: Insurable Interest: Creditor and Debtor: Wager Contract: What Not. Though a creditor's interest in an insurance

policy extends only to the amount of his debt, yet the mere fact that a debtor's life was insured by his creditor with the debtor's consent in excess of the indebtedness does not make the policy void as a wager contract, but the creditor is bound to the debtor's estate as trustee for the excess.

6. ————: **Debtor and Creditor: Fraud.** Where a life policy was made payable to one whose interest was described as "creditor," the debt being much less than the face of the policy, this alone would not establish fraud, the application disclosing he was a creditor and the company making no inquiry as to the amount of the debt.

7. ————: **Policies: Law of Land Part of Each.** The law of the land is a part of every insurance policy and must be read into it.

8. ————: **Policies: Insurable Interest: Validity.** Where an insurance policy is payable wholly to a beneficiary or there is an absolute assignment to óne who has no insurable interest other than that of creditor, the law construes the policy to be one payable to such beneficiary or assignee only to the extent of the indebtedness due him and the balance of the policy as belonging to the estate of the insured, unless otherwise directed. It is valid so far as the creditor is concerned to the extent of the valid indebtedness to him and it is valid as to the remainder in favor of the estate of the deceased.

9. ————: **Insurable Interest: Debtor and Creditor: Debtor Insolvent.** The fact that a debtor is insolvent and that there is no reasonable expectation of his becoming solvent so as to pay the debt, does not render void a life insurance policy payable to a creditor of the insured.

10. ————: **Debtor and Creditor: Recovery Allowed.** A life insurance policy was made payable to one whose interest was designated as "creditor." Such person may recover thereon not only the amount the debtor owed him when the policy was issued, but subsequent advances made on the faith thereof under an agreement that the policy should stand security therefor. Attorney's fees and expenses incurred in collecting the policy should also be awarded.

11. ————: **Debtor and Creditor: Policy Payable to Creditor: Recovery of Entire Policy for Self and as Trustee.** A life policy was made payable to one whose interest was designated as "creditor." Although the amount above his debt must go to the estate of the insured, yet such "creditor" may recover of the insurance company the whole amount of the policy as a trustee of an express trust.

Appeal from Dunklin County Circuit Court.—*Hon. T. R. R. Ely,* Special Judge.

REVERSED AND REMANDED (*with directions*).

*Bartley & Douglass, Donaldson & Tribble,* for appellant.

(1) Appellant, National Life Association, is an assessment company. McCoy v. Bankers Life Assn., 134 Mo. App. 35. (2) The beneficiary named in a policy of insurance in an assessment company must have an insurable interest in the life of the assured and the rule of law permitting a person himself to insure his own life for the benefit of another is abrogated by the statute so far as assessment companies are concerned. R. S. 1909, sec. 6956. (3) Assessment insurance companies are expressly exempted by statute from the provision of the general insurance laws, allowing damages and attorney's fees for vexatious delay. R. S. 1909, sec. 6959. (4) In an action on an insurance policy by a creditor named as the beneficiary or by assignment, it is necessary to both aver and prove an insurable interest and prove the exact amount of the debt due from the assured. Singleton v. Insurance Co., 66 Mo. 63; Ryan v. Insurance Co., 117 Mo. App. 688; Crotty v. Ins. Co., 144 U. S. 621; Locke v. Bowman, 168 Mo. App. 121. (5) A person cannot procure insurance on his life for benefit of a creditor further than is necessary to secure the debt and premiums to keep same alive. Mutual Life Ins. Co. v. Richards, 99 Mo. App. 88; Deal v. Hainley, 135 Mo. App. 507; Locke v. Bowman, 168 Mo. App. 121. (6) One person cannot procure insurance on the life of another. Hewsner v. Insurance Co., 47 Mo. App. 336; Ryan v. Insurance Co., 117 Mo. App. 688; Deal v. Hainley, 135 Mo. App. 508. (7) Future or prospective obligations will not support an insurable interest in the

absence of a contract entered into at the time of taking out the insurance or the assignment of the policy to the effect that the policy is to secure such future advancements or prospective obligations as well as the present indebtedness. Deal v. Hainley, 135 Mo. App. 508; Bruer v. Ins. Co., 100 Mo. App. 540.

*C. P. Hawkins, Bradley & McKay* for respondent.

(1) In this State it is settled law that it is not the nature of the society nor the character of the insurance or contract it may write but the terms of the contract which determines whether it is exempt from the general statute governing insurance. Williams v. Ins. Co., 189 Mo. 70; Toomey v. Supreme Lodge, 147 Mo. 129; McDonald v. Bankers Life Assn., 154 Mo. 618; Folkens v. Ins. Co., 98 Mo. App. 480; Wilson v. Amer. Benev. Assn., 125 Mo. App. 597. (2) Both the application and the policy sued on in this cause states that D. C. Morrow, the beneficiary in said policy bears the relation of creditor to the insured. There being no statute in this State defining an insurable interest mentioned in Sec. 6956, R. S. 1909, the common law will prevail as to what constitutes an insurable interest. Warnock v. Davis, 104 U. S. 775; Mutual Life Ins. Co. v. Lucks, 108 U. S. 498; Wilkinson v. Life Ins. Co., 63 Mo. App. 404. (3) Respondent did aver and prove an insurable interest as a creditor of the insured. He also proved that this policy was taken out by Vines of his own volition and that he intended for Morrow to have the whole of the policy at the time he took the same out, and the questions of fact were fairly submitted to a jury and a verdict for respondent, and respondent ought to recover the full policy. Strode v. Drug Co., 101 Mo. App. 627; Deal v. Hainley, 135 Mo. App. 507; Mutual Life Ins. Co. v. Richards, 99 Mo. App. 88; Warnock v. Davis, 104 U. S. 775. (4) Respondent concedes that one person can-

not procure insurance on the life of another, unless he does so to secure a debt and then he could only collect the amount of the debt, and premiums if paid by him, but the facts in the cause at bar show the insurance was not procured by Morrow, respondent herein, but that the same was taken out by Vines, the insured, of his own volition and with the intention that Morrow was to receive the full policy, and hence the cases cited are not in point. (5) Should the court hold that respondent's instruction number 1 did not properly declare the whole law of the case, the error, if any, has been cured by appellant's instructions numbers 1, 2, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 16, 17, 18, 19 and 20, which fairly submit all the issues raised by both respondent and appellant, and all errors, if any, were cured. Scott Force Hat Co. v. Hombs, 127 Mo. 403; Reames v. Jones D. G. Co., 99 Mo. App. 403.

STURGIS, J.—The defendant on May 16, 1911, issued its policy of insurance on the life of Charles P. Vines, of Gibson, Dunklin county, Missouri, wherein it agreed to pay the plaintiff, therein designated as "creditor," the sum of $2000. In the event of the death of the plaintiff prior to that of the insured no other beneficiary is named. As a part of the policy it is stated: "The foundation principle of. the system of insurance carried out by this association is to collect from the members such sums as are necessary for the payment of death and disability claims, accumulate a reserve fund and pay legitimate expenses, the same being apportioned among the members according to their ages, and the amount of insurance held by each. The reserve fund is held for the payment of death and disability losses in excess of twelve thousand dollars per annum for each one million ·dollars of insurance in force (or twelve deaths to each thousand members). The reserve is invested in interest bearing securities which are deposited with the Auditor of

State, of the State of Iowa, as required by the laws of said State; the principal and interest of said fund can only be used for the payment of losses as above stated."

Vines died September 14, 1912, plaintiff made proof of death, demanded payment of the $2000, which was refused, and thereupon brought this suit seeking to recover said amount together with attorneys' fees and damages as provided for in the amendment. [Laws of 1911, p. 282, of section 7068, R. S. 1909.] The defendant appeared and filed an answer containing a general denial and alleging false representations by the insured in his application.

Plaintiff was engaged in the mercantile business at Gibson at the time the policy was taken out and had an account, as he testified, against Vines amounting to $95, which had been placed in the form of a note. The application for the policy states that plaintiff bore the relation of "creditor" to Vines. After the policy was issued plaintiff claims to have advanced further sums to Vines for premiums, burial expenses, etc., making the total indebtedness amount to $750. Plaintiff paid all of the assessments on the policy and in addition thereto deposited $25, apparently to be used as a fund to meet future assessments. The testimony is conflicting as to who procured or caused the insurance to be taken out in plaintiff's favor, but plaintiff testified that it was done by Vines without any suggestion or instigation upon plaintiff's part and the jury so found. He also testified that soon after the policy was taken out Vines sold his restaurant business, was insolvent, in poor health and went away for the purpose of regaining his health, and that the expenses of the trip were paid by donations of his neighbors; that later, after he returned, a fraternal order sent him to Colorado Springs, where he died. The plaintiff testified that before the assured left for that point he furnished him with clothing and some money and that he

also went to attend to his burial at that place, a portion of the expense of which, including the trip, constitutes a part of the amount of the indebtedness claimed here. Shortly before Vines died he executed a note to plaintiff for $1800, although he owed plaintiff not to exceed $750.

We consider it unnecessary to discuss the instructions further than to state that they authorized a recovery by plaintiff of the full amount of the policy if he was not the procuring cause of its being taken out and if the jury believed he was a creditor of the deceased at the time it was applied for and issued. Under the instructions a recovery was allowed for damages and attorneys' fees if the jury believed defendant vexatiously refused to pay the policy. There were also evidence and instructions on the question of misrepresentations in the application for the insurance, which question was found against the defendant and no error is assigned thereon.

The jury returned a verdict in favor of the plaintiff in the sum of $2000 and $100 interest and found that the defendant had vexatiously refused to pay the amount after demand and, therefore, found for the plaintiff in the sum of $300 for attorneys' fees. Whereupon, judgment was entered for $2400, from which the defendant has appealed.

That the defendant was authorized to do business in this State is alleged in plaintiff's petition and that it was operating under the assessment plan (Section 6950, et seq., R. S. 1909) appears to be a subject of so little doubt as to require only brief notice. Said section 6950 reads as follows: ''Every contract whereby a benefit is to accrue to a person or persons named therein upon the death or physical disability of a person also named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insur-

ance upon the assessment plan, and the business involving the issuance of such contracts shall be carried on in this State only by duly organized corporations which shall be subject to the provisions and requirements of this article." The portion of the policy quoted discloses that the benefit therein provided for is "dependent upon the collection of an assessment upon persons holding similar contracts." The policy states that it is issued in consideration of the application and medical examination, the advance payment of $16.80, "and the payment of all stipulated payments and calls required under this contract at or before the time when due and payable." No fixed periodical premium is provided for. Defendant was, therefore, operating under the assessment plan. [Elliott v. Insurance Co., 163 Mo. 132, 151, 63 S. W. 400, et seq., and cases there cited; McCoy v. Bankers' Life Assn., 134 Mo. App. 35, 40, 114 S. W. 551.]

That the plaintiff in this case was not entitled, under section 7068, Revised Statutes 1909, and the amendment thereto (Laws of 1911, p. 282) to recover damages or attorneys' fees for the alleged vexatious refusal to pay, is also clear. The concluding proviso in section 6959, Revised Statutes 1909, expressly states that nothing in that article contained shall subject any corporation doing business thereunder to any other provision or requirement of the general insurance laws of the State except as distinctly therein set forth and provided. There is nothing anywhere in that article that makes section 7068, or its amendment, applicable to companies operating on the assessment plan, and we hold that it cannot be invoked in a suit of this character.

The most difficult question that we have to contend with is as to the validity of the policy involved in this case. Section 6956, Revised Statutes 1909, prohibits any company doing business under the article concerning assessment plan insurance from issuing a policy

upon the life of any person in which the beneficiary
named has no insurable interest and also prohibits the
assignment of any policy to any such person.  It is
said in the case of Masonic Benevolent Assn. v. Bunch,
109 Mo. 560, 576, 19 S. W. 25, that: "It has not been
easy for the courts to define with exactness what is
meant by the term 'insurable interest.' "  All the au-
thorities hold, however, that a creditor of the insured
has such an interest.  [25 Cyc. 706; 1 Cooley's Briefs
on Law of Insurance, 294; 1 Bacon on Benefit Socie-
ties & Life Insurance, sec. 250a.]  A policy issued in
his favor, or an assignment thereof to him, is valid
whether taken out and paid for by the insured or by
such creditor, except so far as the same may be re-
stricted or made void by the laws governing wagering
contracts.

There are many authorities holding that where an
insurance policy is taken out and paid for in good
faith by the insured, that he may make it payable to
whomsoever he may desire, regardless of any insura-
ble interest of such beneficiary and such policy is valid
for the full amount in favor of such beneficiary.  [Bar-
nett v. United Brothers of Friendship (Ala.), 64 So.
518.]  The present policy, however, is governed by
our statute, above quoted, and the beneficiary therein
or the assignee thereof must be one having an insura-
ble interest.  This policy is therefore governed by the
laws applicable to wagering contracts and is much like
one procured by the creditor on the life of his debtor.
It is held, however, that the particular statute in ques-
tion and the laws governing insurance on the assess-
ment plan generally do not prevent a policy being is-
sued in favor of a creditor of the insured according to
his interest as creditor and the balance payable to the
estate of the insured.  [Pietri v. Seguenot, 96 Mo.
App. 258, 69 S. W. 1055.]

The present policy is made payable to plaintiff
and his interest is designated as "creditor."  It is not

expressly stated that the balance above his interest as creditor is payable to the estate or legal representatives of the insured, but if the law, as we shall see it does, construes such policy to be valid as to the beneficiary only to the extent of his valid indebtedness, then does it not also so construe the policy as to make it valid as to the surplus as against the defendant and in favor of the estate of the insured, and make the plaintiff a trustee of an express trust as to such surplus with the estate as *cestui que trust*.

That such a policy is valid in favor of the creditor named as beneficiary to the extent of the valid indebtedness due him is well established. "A creditor has an insurable interest in the life of his debtor; and can insure the life of a debtor without his consent; but such interest is limited to the amount of the debt." [1 Bacon on Benefit Societies & Life Insurance, sec. 250a. See, also, 25 Cyc. 900; Exchange Bank v. Loh, 104 Ga. 446, 44 L. R. A. 372.] This same author, (Bacon) section 250b, further says: "If the person effecting the insurance has no insurable interest in the life of the insured he cannot recover more than the amount of premiums paid with interest, but if he collects the whole amount of the insurance he must pay over to the personal representatives of the insured the excess over the amount of the premiums and interest. And where the beneficiary has *no* insurable interest the heirs of the insured can, in an action brought by such beneficiary, to recover on the policy, intervene and recover in his place." For other cases sustaining this view, see 1 Cooley's Briefs on Law of Insurance, pages 301, 302 and 306.

In the present case there is nothing to show that any fraud or deception was practiced on the defendant company in procuring the policy. The application for the policy made by the assured discloses that the beneficiary was a creditor only, without stating to what amount. The company did not ask for or require any

further information. It issued the policy, payable to him as creditor, and charged and collected the regular premiums. As to it the contract was fairly made on as full information of the facts as to the insurable inter-est of the beneficiary as it cared to know. As between the insured and beneficiary the jury has found that the policy was procured with the full knowledge and consent of the insured, who designated the beneficiary therein, and was taken out of his initiative, though the plaintiff, as beneficiary, has paid all the premiums. The contract is not tainted with fraud or unfair dealing as between them.

There is, therefore, an absence of any fraud, misrepresentation or concealment in the making of this contract and the question here is as to what construction the law places on such a contract thus fairly made. We think the law does not make such policies or assignments thereof void, though the debt secured is much less than the face of the policy and the beneficiary or assignee has no other insurable interest therein. The law, however, will, in order to save such policy from being a wagering contract or for other good reason, construe the same or the assignment thereof as being a contract of security only and the interest of the beneficiary or assignee as being only coextensive with the amount of the valid indebtedness of the insured. It is often said that, as to such a beneficiary or assignee, the policy is a wagering contract when the value thereof is disproportionate to the amount secured and is therefore void as to the amount in excess of such indebtedness. But, by this nothing more is meant than that the beneficiary can only collect *for his own use,* or retain, in case he collects all, an amount equal to the insured's indebtedness to him.

In this respect policies and assignments thereof stand on much the same footing, depending on which is drawn in question as being a wagering contract. Either the original policy or an assignment thereof is void

as a wagering contract when made to one having no insurable interest in the life insured. Where the contract is drawn in question as being a wagering one and therefore void as against public policy, in a contest between the parties thereto where the rights of the parties depend on the wagering contract, it can make no difference whether the contract thus drawn in question is the original policy or an absolute assignment thereof. No person can recover whose right to do so is dependent on a wagering and therefore void contract, regardless of the form of such contract. The question as to the rights of a creditor holding a policy more often arises on assignments absolute in terms than on the original policy, but the principles are the same. In Exchange Bank of Macon v. Loh, 104 Ga. 446, 44 L. R. A. 372, 373, it is said: "It makes not a particle of difference whether the policy be payable to the insured, or his estate, with an assignment to the creditor, or payable directly to the creditor as the nominated beneficiary. The real thing to be ascertained in any given instance is, what was the actual object of the parties, for by this test alone is the legality of what they did to be determined."

The case of Cammack v. Lewis, 82 U. C. 643, 31 L. Ed. 244, is much like the present case on the facts and is a leading case on this subject. There a policy of $3000 was assigned absolutely as soon as issued to one having no insurable interest except as creditor to the small amount of $70. The court held that: "To procure a policy for $3000 to cover a debt of $70 is of itself a mere wager." It is plainly meant, however, that such would be the case if the assignee could collect and retain the whole amount of the policy on the death of the insured. The court construed the assignment, absolute in form, to be one of security only, but void in favor of the assignee as to the amount above the debt secured. The assignee having collected all the policy was allowed to hold an amount equal to the in-

debtedness due him and was held to be a trustee for the balance in favor of the insured's estate. The court said: "Under these circumstances, we think that Cammack (beneficiary) could in equity and good conscience, only hold the policy as security for what Lewis (insured) owed him when it was assigned, and such advances as he might afterwards make on account of it, and that the assignment of the policy to him was only valid to that extent." The absence of any actual fraud is taken note of in that case. This case has been several times cited and approved in this State, and, in 1 Cooley's Briefs on Law of Insurance, 308, this case is commented on as holding that, "where an assignment as security is a wager, the representatives of the deceased are entitled to the proceeds over and above the actual amount due the assignee, who will be held to account, thus apparently foreshadowing the Texas rule," which we will notice later on the question of the right of the beneficiary to collect the whole of this policy as trustee of an express trust.

This same author, page 302, in speaking of creditors' policies, says: "Though a creditor's interest extends only to the amount of his debt (Morris v. Georgia Loan, Sav. & Banking Co., 109 Ga. 12, 34 S. E. 378, 46 L. R. A. 506), yet the mere fact that a creditor insured his debtor's life, with the latter's consent, in excess of the indebtedness, does not make the policy void as a wager contract, but the creditor is bound to account to the debtor's estate as trustee for the excess (Strode v. Meyer Bros. Drug Co., 101 Mo. App. 627, 74 S. W. 379)." In the Strode case, just mentioned, the insurance policy was for $5000; $50 being payable to the insured's estate and $4950 to the Drug Company as creditor. It was shown that the debt of the Drug Company was much less than the amount of the policy payable to it. The court held that notwithstanding the policy was taken out on the initiative of the insured and made payable to the Drug Com-

pany, yet, it, being a creditor only, was entitled to only an amount sufficient to cover its debt. In this case there was no provision in the policy providing that the balance of $4950, payable to the Drug Company over and above the amount of its actual indebtedness, should go to the estate of the deceased. The court construed the policy, however, to be one in which a sufficient amount of insurance would go to the beneficiary to pay its debt and the balance would belong to the insured's estate. It also held that as to the remainder of the insurance money, the creditor, who had collected it, stands as trustee for the estate of the insured. The court, l. c. 635, said: "The point is made that if the appellant had no right to insure Stokes' life beyond a sum sufficient to make it safe as his creditor, the policy was void as a speculation or wager on the life of Stokes. This position is untenable. The law views the contract of insurance as having been made for the benefit of the *appellant* to the extent of its interest in Stokes' life, and for the benefit of *Stokes' estate* as to the excess of the fund realized from the policy. In the absence of evidence which forces the conclusion that such a contract was speculative, the opinion that it was not is adopted to avoid a forfeiture, which the law shuns when possible."

In Deal v. Hainley, 135 Mo. App. 507, 514, 116 S. W. 1, the policy was issued to defendant, a nephew, who was held to be without insurable interest, and was payable wholly to him. The evidence shows that he was in fact a creditor. The court held that if Coleman, the insured, took out the insurance on the inducement of defendant, Hainley, the beneficiary, and that he was the active and moving party in the transaction, the policy would be speculative and in that event the beneficiary would be entitled to keep no more of the proceeds of the policy than the amount of his claim against the insured's estate. On the other hand, if the in-

sured, Coleman, procured the policy with an understanding that the defendant's interest in it should be only as security for what he owed, then defendant could retain no more than the amount of his debt. In this case there was no provision in the policy as to paying the balance above such indebtedness to the estate, but the court held that the law made it such and that the beneficiary held such balance for the benefit of such estate.

In cases like this, the disproportion between the amount of the policy and the debt owing to the beneficiary or assignee is of little importance. [Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893.] It might be important as proving actual fraud. The law of the land is a part of every policy and must be read into it. Where a policy is payable wholly to a beneficiary or there is an absolute assignment to one who has no insurable interest other than that of creditor, then the law construes the policy to be one payable to such beneficiary or assignee only to the extent of the indebtedness due him and the balance of the policy as belonging to the estate of the insured, unless otherwise designated. The policy is, therefore, valid so far as the creditor is concerned to the extent of the valid indebtedness to him, and it is valid as to the remainder in favor of the estate of the deceased. This question arose in Insurance Co. v. Rosenheim, 56 Mo. App. 27, 34, on an absolute assignment of a policy to a creditor, and the court held that the assignment of the policy was not speculative or wagering to the extent of the debt secured. The court held that to the extent of the recovery permitted, the assignee had no speculative interest in the life of the insured, and, hence, the transaction does not come within the reason that public policy invalidates an insurance contract or an assignment thereof in favor of one who has no insurable interest in the life of the insured.

The court said: "As we have seen, that principle is not impinged by validating such transfer to the extent of the purchase price paid in good faith therefor." In Heusner v. Ins. Co., 47 Mo. App. 336, 344, where the amount secured was much less than the amount of the policy, the court said that "the transaction can only be regarded as a wager on the life of Graham, and, therefore, void beyond the amount then actually paid for the policy." In that case the court allowed the assignee to retain the amount which he had paid for the policy and awarded the balance of it to the administrator of the deceased's estate. In Mut. Life Ins. Co. v. Richards, 99 Mo. App. 88, 72 S. W. 487, the court held that an assignment of the policy, though absolute in form, gives an interest in the policy to the assignee only to the extent of the amount actually advanced thereon and the balance of the policy goes to the beneficiaries of the estate. In that case the amount of the policy was out of proportion to the amount of the indebtedness secured, but the court again held that the assignment was void as a wagering contract only to the amount above the debt secured. The court held that while the law is different in some States, that in this State the interest acquired by the assignee of an insurance policy on account of advancements to pay premiums constituted all his interest in the insurance; "*further* than that the assignments were obnoxious to public policy as being a speculation or wager on the life of the insured." The court then cites several cases for the purpose, as there stated, "to refer to them for an elucidation of the reason for prohibiting individuals having no insurable interest in the life of another from taking the benefit of insurance policies either by original issue or assignment, except in so far as is necessary to secure a debt owing to the assignee." These cases are not in conflict with Jenkins v. Morrow, 131 Mo. App. 288, 296, 109 S. W. 1051, or Bruer v. Mut. Life Ins. Co., 100 Mo. App. 540, 544, 75

S. W. 380, where it is held that an assignment of a policy or an interest therein to one having *no* insurable interest is void as against public policy. The contrary is plainly implied in the Bruer case, supra, in stating that the beneficiary had no insurable interest as a creditor or otherwise. In Locke v. Bowman, 168 Mo. App. 121, 129, 151 S. W. 468, where a paidup policy for $5532 was assigned absolutely to secure $250, the court held: "The assignment to Schwarzhopf, being made to one having no interest in the life of the insured, was prima-facie void and if he was a creditor it would be valid only to the amount of his advances." The court further held such assignment valid to that extent.

In this, as in several of the cases cited, the contest was between the beneficiary and assignee of the policy, involving the contract of assignment, claimed to be void as against public policy, made between the contesting parties. Of course, if the contract of assignment was void as a wagering contract, the assignee, being a party to the void contract, could recover nothing thereon. Exactly the same principle applies where the original policy is a wagering contract. In the absence of actual fraud or intent to make a wagering contract, such contracts are void *in toto* only where there is *no* insurable interest in the beneficiary; but where the beneficiary is a creditor, then the contract is void as to him only in excess of the insurable interest, however disproportionate that may be.

Nor is such a policy void as to the creditor to the extent of this valid indebtedness because the insured is insolvent and there is no reasonable expectation of his becoming solvent so as to pay the debt. However insolvent a man may be, if his health is such that a policy of insurance will be issued on his life, his creditor has such reasonable expectation that he will live long enough to pay the debt as to make the policy valid in this respect. However insolvent a debtor may be, the creditor had a right to trust his common honesty and

to believe that if he lives a reasonable time he will pay the debt. He would, therefore, have a right to insure his life so as to secure the debt in case the debtor dies before paying the same. No case has been cited, and we doubt if any will be found, holding that a creditor does not have an insurable interest in the life of his debtor merely because he is insolvent and there is no proof that he would pay the debt even if he should live.

As to the amount which the creditor may collect on an insurance policy of this kind, it seems to us that it might go further than enough to pay the amount which he actually owes at the time the policy is issued and the advancements which are then agreed and contemplated that he will make in the future. Even if there were no promises made as to future advancements, yet, if the creditor, being the beneficiary in the policy or holding it by assignment, afterward makes advances on the faith of such policy and with an understanding then had that the policy is to stand security therefor, we think such payments should be included in the amount to be recovered by him. Such is the ruling in Cammack v. Lewis, 82 U. S. 643, 21 L. Ed. 244, where the court held that the policy was security for the amount owed when it was assigned, "and such advances as he might afterwards make on account of it," [Exchange Bank of Macon v. Loh, 104 Ga. 446, 44 L. R. A. 372.] This may include funeral expenses if there is an understanding to that effect (Shaffer v. Spangler, 144 Pa. St. 223, 22 Atl. 865), and attorney fees and expenses of collecting the policy should be allowed.

We hold, therefore, that this is a valid policy in all respects, being valid as to the beneficiary to the extent of the indebtedness due him and valid as to the estate of the deceased for the balance.

The next question arises as to the right of plaintiff to have judgment for the whole amount of this

policy. Only a part of it properly belongs to him; the balance should go to the estate of the insured. Plaintiff put in evidence assignments from some, and perhaps all, of the next of kin of the insured. But paying the money to the estate is different from paying it to the next of kin. Creditors of deceased may have claims that will have to be satisfied before distribution.

We think the plaintiff may recover the whole policy as a trustee of an express trust. It is so held in a number of cases, especially in Texas, and the rule is stated in 1 Cooley's Briefs on Law of Insurance, 301, as being that, "while a person whose interest is not commensurate with the policy, or who in fact has no interest, may recover as against the company, such right does not determine his title to the proceeds as against the heirs or representatives of the insured." The rule is stated in Equitable Life Ins. Co. v. Hazlewood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893, as follows: "An assignment of a valid policy to one having no insurable interest in the life insured (other than creditor) does not invalidate the policy. The assignee may collect and apply the proceeds, if he is a creditor, to the extinguishment of his own debt and such sums as he may have disbursed for the purpose of keeping the policy alive; and the surplus may be collected for the benefit of the heirs of the person whose life was insured. We see no reason why the same rule may not be applied to a person designated in the policy as the beneficiary treating him, when he has no insurable interest as an assignee, appointee or trustee, to receive the proceeds for whoever may be lawfully entitled to enjoy them. The insurer will then be required to pay the sum it has promised to pay, and the money cannot be appropriated by anybody not having a legitimate right to it." [See also Mutual Life Ins. Co. v. Blodgett, 8 Tex. Civ. App. 45, 27 S. W. 286; Schonfield v. Turner, 75 Tex. 324, 12 S. W. 626, 7 L. R. A. 189; Cheeves v. Anders, 87 Tex.

287, 28 S. W. 274, 47 Am. St. Rep. 107; Grattan v. Nat. Life Ins. Co., 15 Hun. 74; Greenfield v. Mass. Mut. Life Ins. Co., 47 N. Y. 430.] It is a short step from holding that the beneficiary having only a limited interest as creditor in the amount of the policy is, after he has collected such amount, a trustee and holds the excess amount above the secured debt for the insured's estate, as our courts have held many times, to a holding that he may as such trustee sue and recover the whole amount of a contract made payable to him, and then hold it in the same manner. This is analogous to the holding that allows a consignor, in whose name the contract is made for carrying freight, though not the owner of the goods shipped after delivering same to the carrier, to sue and recover for their loss as a trustee for the owner. [Warehouse Co. v. Railroad, 124 Mo. App. 545, 564, 102 S. W. 11.]

It results that this cause should be reversed and remanded, with directions to allow the defendant company, if it so desires, to pay into court the amount of the policy, $2000, with interest at six per cent since the commencement of this suit, and direct that the plaintiff, the personal representatives of the deceased, and any others persons interested in the fund be required to interplead and settle their conflicting claims, if any, to said fund; that if defendant refuses to do so, that a judgment be entered in plaintiff's favor as trustee for said sum; that the court make any further orders necessary or proper to protect the interests of the respective claimants of said fund. [Burroughs v. Mut. Life Ins. Co., 97 Mass. 359.]

*Farrington, J.,* concurs.

*Robertson, P. J.,* concurs in that part of this opinion holding that defendant is an insurance company operating under the assessment plan and is not liable for attorneys' fees and damages, but dissents as to the balance of the opinion and as to the result reached.