SUN LIFE ASSURANCE COMPANY OF CANADA, a corporation, Plaintiff,

v.

Mary P. WEYEN, individually and as guardian of Daryl Weyen and Carolyn Weyen, minors, Elfrieda May, Ralph B. Defenbach as trustee, E. J. Stanfill as trustee and E. J. Stanfill as executor of the estate of Robert Francis Weyen, deceased, Defendants.

No. 1309.

United States District Court
E. D. Washington, N. D.·
Dec. 15, 1955.

Graves, Kizer, Greenough & Gaiser, Spokane, Wash., for plaintiff.

S. Dean Arnold, Clarkston, Wash., for defendants Mary P. Weyen, individually and as guardian of Daryl Weyen and Carolyn Weyen; and E. J. Stanfill as trustee, and E. J. Stanfill as executor of estate of Robert Francis Weyen, deceased.

C. C. Rowan, Spokane, Wash., for defendant Elfrieda May.

Paul C. Keeton, Lewiston, Idaho, R. Max Etter and Ellsworth I. Connelly,

594

Spokane, Wash., for defendant Ralph B. Defenbach, Trustee.

DRIVER, Chief Judge.

This is an interpleader action in which the plaintiff, Sun Life Assurance Company of Canada, a corporation, has deposited in the registry of the court the net proceeds of eight insurance policies on the life of·Robert F. Weyen, who died on April 16, 1955. Several rival claimants to such proceeds have been impleaded as defendants.

There is little dispute as to the facts which, for the most part, are established by documentary evidence. On September 22, 1953, the insured, Robert F. Weyen, a resident of Asotin county, Washington, secured a decree of divorce in the superior court of that county from his wife, Mary P. Weyen. The mother was awarded the custody of the two minor children of the parties, Daryl Weyen and Carolyn Weyen. The father was required to pay $200 a month for their support during their minority, and the insurance policies in suit, in accordance with the property settlement agreement entered into between the parties, were awarded to the insured, Robert F. Weyen. On the next day following the entry of the divorce decree, Robert F. Weyen executed a trust agreement or declaration of trust, in which he named his attorney, defendant E. J. Stanfill, as trustee, and stated that he had designated the trustee as beneficiary in ten life insurance policies.[1] The policies constituted the corpus of the trust. The trust was to continue for a period of fifteen years, and the beneficiaries were the two minor children of Robert F. Weyen. The trust instrument provided that in case of the death of Robert F. Weyen during the trust period, the trustee should collect the proceeds of the life insurance policies and use them for the education, maintenance, and support of the minor children. The trust agreement contained the following provision:

"The donor specifically reserves the right, during the term of this trust, to pledge any of such policies as collateral or to exercise the loan rights as provided in said policies, and in the event the donor makes application for such loans, it is hereby expressly understood that the signature of the Trustee named herein shall not be required to join in the application for said loans."

On the same day, September 23, 1953, Robert P. Weyen executed a last will and testament in which he stated that he had made no provisions for his minor children because "I have heretofore provided for them through Insurance Policies on my life; however, should said policies lapse or become null and void I hereby give, and devise and bequeath to my said children the sum of $10,000.-00 share and share alike."

On November 16, 1954, Robert F. Weyen executed an assignment to a trustee for benefit of his creditors. In that document he stated he was in financial difficulties and unable to pay his debts, and that he assigned all his property, assets and income to defendant, Ralph B. Defenbach, as trustee for his creditors. Certain real property and a number of items of personal property were particularly described in the assignment, including all but one of the life insurance policies which are the subject of the present action.[2]

1. Seven of the policies are involved in the present action. Three were issued by insurance companies other than the plaintiff.

2. One insurance policy, No. 1,447,698, in the amount of $2,000 listed in the trust agreement, was not included in the assignment for the benefit of creditors. Previously, on October 7, 1954, it had been assigned to Robert F. Weyen's mother, Elfrieda May. One policy, in the amount of $6,000, listed in the assign-

ment, is apparently listed under the wrong policy number in the trust agreement. Another policy in the amount of $10,000 was issued to Robert F. Weyen on December 16, 1953, subsequent to the trust agreement, but the agreement evidently was intended to apply to it as the beneficiary named therein is "E. J. Stanfill, as trustee under Trust Agreement dated the *nineteenth* day of *October*, 1953." [Sic.]

The paragraph of the assignment in which the life insurance policies were listed recited that Robert F. Weyen, the assignor, had prepared the necessary documents to have Ralph B. Defenbach made his beneficiary for the benefit of creditors "joining in this assignment" in the event of his death, and the assignor undertook immediately to deliver the policies to Defenbach for forwarding "to the home offices of the companies issuing said policies so that appropriate endorsements may be attached thereto" showing Defenbach as beneficiary thereunder.[3] The instrument further stated that "this assignment shall constitute a mortgage upon all of the property listed herein."

The question presented for determination is whether the defendant, E. J. Stanfill, as trustee in the trust agreement of September 23, 1953, or defendant, Ralph B. Defenbach, as trustee in the assignment for benefit of creditors of November 16, 1954, is entitled to the proceeds of the life insurance policies which are listed in and covered by both instruments. Defendant Stanfill argues that the trust agreement of September 23, 1953, set up an irrevocable trust whereby the trust settlor, Robert F. Weyen, divested himself of the right to change the beneficiary, and created in the trustee for the benefit of his minor children a vested right in the proceeds of the insurance policies, which constituted the corpus of the trust. The donor, Weyen, could not thereafter without the consent of his children, it is argued, make defendant Defenbach as trustee for his creditors, the beneficiary under the policies. The record not only shows no such consent on their part but, since they were minors, they were incapable of giving effective consent.

It seems to me that it is not necessary to decide whether the trust agreement set up an irrevocable trust so far as the right to change the beneficiary is concerned. By its plain terms, the document specifically reserved a right in the donor Weyen to exercise the loan rights as provided in the policies and "to pledge any of such policies as collateral."[4] There can be no doubt as to what Weyen intended by the language just quoted. The trust agreement was drafted by a lawyer, and in legal parlance "pledging as collateral" means putting up property as security for a debt additional to the personal obligation of the debtor. Pledging for collateral provides concurrent additional security for the payment of the debt, whether it is antecedent or newly created.[5]

By his trust agreement and last will, Robert F. Weyen clearly indicated that he desired to make provision for the support of his minor children in case of his death. But he was a comparatively young man—only thirty-five years of age at the time he executed the agreement—and it may be assumed that he was in ordinary good health as the record shows that he procured life insurance in the amount of $10,000 on December 16, 1953,—only a year and four months prior to his death. He died as the result of an accident, and not from disease. It may be assumed that he had every expectation of living through the fifteen-year period of the trust. The trust, to say the least, was a very thin one, depending for its fruition on a number of contingencies. The children could not have benefited from it unless the father died during the period of the trust, the children survived him, and prior to his death he had not permitted the policies to lapse for fail-

---

3. The assignment also recited that as further security for the participating creditors, the assignor, Robert F. Weyen, "agrees to and does hereby *mortgage and pledge* to the trustee all his interest and equity in all his assets * * *." (Emphasis supplied.)

4. Change of beneficiary to Defenbach was never effected in the manner provided in the policies.

5. See 7A Words and Phrases, Collateral Security, p. 227; Third Nat. Bank v. Hall, 30 Tenn.App. 586, 209 S.W.2d 46, 50; Ex parte Boddie, 200 S.C. 379, 21 S.E.2d 4, 7; McCormick v. Falls City Bank, 7 Cir., 57 F. 107, 110.

ure to pay the premiums. Weyen was a large-scale logging contractor, which is not generally regarded as one of the more stable forms of business activity, and he was burdened by the divorce decree requirement that he pay $200 a month for the support of his two children. When he set up the life insurance trust for his children, obviously he wished to reserve his life insurance as a useful credit resource.[6] When he got into serious financial difficulties in November of 1954, Weyen took advantage of the reservation he had made in his declaration of trust and, in effect, pledged the life insurance policies as collateral security for the payment of his debts. It was not necessary for him to change the beneficiary in order to accomplish that purpose. Indeed, if he had gone through all the forms of changing the beneficiary, or had undertaken to make a complete and unconditional assignment of his life insurance, it would have been regarded in legal effect as an assignment, or pledging for security, as that plainly appeared to be the intention of the parties. There can be no doubt from consideration of the entire instrument of assignment for creditors that Weyen did not intend to make defendant Defenbach his trustee, the unconditional beneficiary of his life insurance, or to convey unconditionally to such trustee all of his property, but intended, rather, to pledge his assets, including his life insurance, as security for the payment of his debts.

It is a well-established, general rule that, if the parties so provide, a pledge of a life insurance policy can be made to secure all existing indebtedness of the assignor to the assignee.[7] When a policy of life insurance has been pledged or assigned as security for the payment of a debt, upon the death of the insured the pledgee or assignee is entitled to so much of the proceeds of the insurance policies as may be necessary to pay the debt.[8]

Since jurisdiction in the instant case is based upon diversity of citizenship of the parties, the governing substantive law is that of the state of Washington, in which this court is held. No case has been brought to my attention, however, which indicates that Washington does not follow the general rules as stated above. Indeed, in Massachusetts Mut. Life Ins. Co. v. Bank of California, 187 Wash. 565, 60 P.2d 675, the Washington State Supreme Court held

6. In Massachusetts Mut. Life Ins. Co. v. Bank of California, 187 Wash. 565, 570, 60 P.2d 675, 678, the Washington State Supreme Court said:

"In these modern, complex times, the right of every man to use his accumulations to pay his debts, especially when he has pledged them to obtain liquid capital, ought not to be limited or abridged except only in those instances where by his own act he has barred his own right of control by creating an irrevocable vested interest in another or others. Life insurance, during the life of the insured, forms a reserve to be drawn upon in times of stress and many have improved their fortunes and bettered the condition of their dependents by drawing liquid capital from that source to enable them to maintain or renew their business activities."

7. National Bank of Kentucky v. Gallagher, 243 Ky. 740, 49 S.W.2d 1006, and Johnson v. Johnson, 297 Ky. 268, 178 S.W.2d 983; 45 C.J.S., Insurance § 419, p. 41; and Couch on Insurance (1930 Ed.), Vol. 6, Sec. 1458u, p. 5257. Also see, Couch Cyclopedia of Insurance Law (1945 Cumulative Supp.), Vol. II, pp. 1821–1822.

8. Detroit Life Ins. Co. v. Linsenmier, 241 Mich. 608, 217 N.W. 919; Minnesota Mut. Life Ins. Co. v. Manthei, Mo.App., 189 S.W.2d 144, and Morrow v. National Life Ass'n of Des Moines, Iowa, 184 Mo. App. 308, 168 S.W. 881. "The great weight of authority is to the effect that where a life insurance policy reserves to the insured the right to change the beneficiary and is such that the insured has the right to assign the same, he may make such assignment without the consent of the beneficiary designated in the policy and without complying with the provisions of the policy prescribing the manner of changing the beneficiary, and upon the death of the insured, the assignee is entitled to the proceeds of the policy to the extent of his interest, as against the beneficiary." Annotation 135 A.L.R. 1040–1041.

that, when a life insurance policy by its language recognizes the right of the insured to assign it, and when the insured may change the beneficiary, one to whom it has been assigned as security for a debt will be held to have a prior right to so much of the proceeds as may be required to discharge the debt secured.

 In the instant case, as I have pointed out, it is immaterial whether the trust agreement deprived the insured, Robert F. Weyen, of the right to change the beneficiary for the reason that, specifically, in the agreement itself, he reserved the right to pledge the insurance policies as collateral security for the payment of his debts.

At the time of his death, the total amount of Weyen's debts covered by his assignment for the benefit of his creditors greatly exceeded the total net proceeds of his life insurance policies. The defendant, Ralph B. Defenbach, therefore, will recover the net proceeds of the life insurance policies impleaded herein except policy No. 1,447,698 assigned to Elfrieda May, and mentioned above in footnote 2, after deducting the plaintiff's costs and attorney fee as determined by the court. Defendant, E. J. Stanfill, as trustee for Daryl Weyen and Carolyn Weyen, will recover like net proceeds of policy No. 1,447,698. It appeared at the trial that the defendant Elfrieda May was not contesting the proceeds of such policy so far as the interests of the minor children were concerned. At any rate, it is doubtful, to say the least, that the policy could validly be assigned by Robert F. Weyen except by way of pledge as collateral security, and I recall no evidence in the record that it was held by Elfrieda May for security for any indebtedness owing to her by the deceased, Robert F. Weyen. None of the defendants will recover any costs against any other defendant, nor against the plaintiff.