THIRD NAT. BANK et al. v. HALL et al.—
209 S. W. (2d) 46.

Middle Section.   December 6, 1947.

Petition for Certiorari denied by Supreme Court, March 5, 1948.

Hume, Howard, Davis & Gale, of Nashville, for complainants.

Seth M. Walker, of Nashville for Mrs. Marcelle Hall.

E. J. Walsh of Nashville, for Mary Fitzgerald Hall, et al.

HOWELL, J.   The bill in this case was filed by the Third National Bank in Nashville, a banking corporation organized under the laws of the United States, individually as a creditor, and in its capacity as a coexecutor of the will of Fitzgerald Hall, deceased, and in its capacity as Trustee under a Trust agreement entered into by it and Fitzgerald Hall in April 1945, and by Elizabeth Hall Clark, a daughter of Fitzgerald Hall, individually and as co-executrix of his estate.   The defendants are Mrs. Marcelle Hall, widow of Fitzgerald Hall, Miss Mary Fitzgerald Hall, a daughter, Mrs. Lillie Gunn Hall, the mother of Fitzgerald Hall and also Dr. Owsley Manier, a creditor of the estate, as representative of all creditors other than preferred.

The bill prayed for a decree instructing and directing the complainants as to the administration of the

estate concerning certain stock held by the bank as collateral to certain notes owing to it by the deceased, which notes also had as collateral an assignment of some insurance policies upon the life of Fitzgerald Hall, which policies had been also transferred to the bank as Trustee for the mother and daughters of the deceased. The question that arose was whether the stocks held as collateral should be sold and the proceeds applied as credits on the notes and the balance paid out of the insurance money or the stocks should be turned over to the Executors free of any lien and the notes wholly paid out of the proceeds of the insurance policies.

The Chancellor held that these notes should be paid out of the insurance money on account of the wording of the trust agreement which will be later referred to. The defendant Mary Fitzgerald Hall, a daughter, has perfected an appeal to this Court and has assigned errors.

There is no material controversy about the facts.

Fitzgerald Hall, a resident of Davidson County, died on February 7, 1946, leaving a will in which he named the Third National Bank and his daughter Mrs. Elizabeth Hall Clark as co-executors. At the time of his death the deceased was indebted to the Third National Bank by three notes, aggregating the face value of $48,971.88. One of these notes for $34,471.88 on a collateral form, shows on its face that the maker pledged with the bank 450 shares of stock in the Lehigh Coal and Navigation Company and an assignment of $106,000 Life Insurance. Another note for $12,000 shows on its face that 32 shares of Third National Bank stock were pledged and the third note is on a plain promissory note form and is for $2,500, with nothing shown on its face as pledged as security. The collateral form of note provides that pledges made

are to secure that particular note and all sums in which the pledgeor may be indebted to the bank.

At the time of his death the Bank held a general assignment by Fitzgerald Hall of $119,000 of life insurance, the 32 shares of Third National Bank stock and the 450 shares of Lehigh Coal and Navigation Company stock as collateral security to the three notes mentioned. By a consent decree in the case the Lehigh Coal and Navigation Company stock was afterwards sold for $5,139.49 and the Third National Bank stock was sold for $16,199.-68. Thus it is seen that after the death of Fitzgerald Hall, the value of the collateral held by the Bank was $140,319.17, to secure an indebtedness of about $50,000. The stocks held and sold as stated amounted to $21,-339.17, and the value of the insurance was about $119,000. The question presented therefore is whether the entire indebtedness should be paid out of the insurance money and the proceeds of the sale of the stock turned over to the Executors of whether this $21,339.17 should be credited on the indebtedness and the balance due paid out of the insurance. All of the insurance was payable to the Third National Bank as Trustee, subject to the assignment as collateral to the Bank as creditor, and the net proceeds to be held under the trust agreement. The net amount held by the Executors is to be disposed of under the will.

The trust of the proceeds of the insurance was created in connection with a property settlement between Fitzgerald Hall and his then wife Elizabeth Gardner Hall and was executed on April 23, 1945. Shortly thereafter Fitzgerald Hall and Elizabeth Gardner Hall were divorced and later the deceased was married to Mrs. Marcelle Hall. No will or codicil to his will was

executed by Fitzgerald Hall after he was married to Mrs. Marcelle Hall, and she therefore is entitled only to what the law provides for her, having dissented from the will. Of course the fact that the Third National Bank is the creditor, the Executor and the Trustee is not material as we will discuss the rights of the parties under the facts.

As shown, the Third National Bank is a party to this suit in its triple capacities, as a corporation to which the insured was indebted individually, and in this capacity it will be referred to herein as the creditor, as a corporation which had been named and was serving as an Executor of the will of the insured, and in this capacity it will be referred to as the Executor, and as a corporation which had been constituted a Trustee for the mother and children of the deceased by a written instrument, and in this capacity it will be referred to as the Trustee. The Bank acting as it is in these three capacities should not, as creditor, make an election as to the application of securities to the satisfaction of its debt, detrimental to its interest in one capacity and favorable to its interest in another. It is proper therefore that it submitted the matter to the determination of the Court.

In a few words the question before the Court is whether the stocks, for the purchase of which a part of the money represented by the notes held by the creditor was borrowed, should be first sold and the proceeds credited on the notes and the proceeds of the insurance policies, so far as necessary, used to satisfy the remainder due on these notes, or the entire indebtedness paid out of the proceeds of the insurance policies payable to the Trustee and the stocks released and turned over to the Executor.

The Executor, having qualified as such, steps into the shoes of the deceased, who borrowed the money,

and it is primarily liable for its payment. The creditor holding the collateral should therefore exhaust the stocks, the property, subject to its claim, of the Executor, before applying any of the proceeds of the insurance policies, the property, subject to its claim of the Trustee for the mother and daughters.

Equity demands that this be done. Certainly it was never intended or anticipated by the insured that a situation would be created by which, should he have seen fit to borrow a larger amount to speculate in more stocks, these stocks would be paid for by his mother and daughters for whom he had created the trust of the proceeds of the insurance policies, possibly to a sufficient extent to consume all of the trust funds.

In his will which was executed December 18, 1928, and to which a codicil was written December 2, 1943, the following appears in Item II:

"After payment of all my just debts, I direct that the entire balance of my estate, real, personal and mixed, (except that the proceeds of insurance policies made payable to said Third National Bank as trustee under this will are not to be subject to any of my debts), be turned over to the said Third National Bank and my wife (who need make no bond) as joint trustees for the following uses and trusts. . . ."

Later, and on April 23, 1945, the trust agreement was entered into which resulted in the beneficiary being changed in these policies to the Third National Bank, as Trustee.

Item 6 of the trust agreement is in part as follows:

"The Trustee shall pay from the proceeds derived from said insurance policies the following items:

"(a) Any debts of the Grantor due or payable to the Third National Bank which are secured by assignments of any of the life insurance policies covered by or included in this Trust Agreement."

Item 8 is in part as follows:

"The Trustee shall pay the net income derived from the investment of said funds as follows:

"(a) The entire net income shall be divided equally among the Grantor's two daughters, Elizabeth Hall Clark and Mary Fitzgerald Hall, and his mother, Mrs. Lillie Gunn Hall; provided, however, that the Trustee shall in all events pay Mrs. Lillie Gunn Hall the sum of $150.00 each month during her life out of said net income. After the death of Mrs. Lillie Gunn Hall the net income shall be divided equally between the two daughters of the Grantor."

At the time the trust agreement was executed, the insurance policies had already been deposited as collateral, along with the certificates of stock mentioned, with the creditor, to secure the indebtedness which from this record appears to have been created for the purpose of raising the money to buy the stock thus held by the creditor as collateral.

■ We do not think that the language used in Section 6 of the trust agreement, as set out, is controlling to the extent of directing that the entire debt to the Bank should be paid by the Trustee. The expression "any debts of the Grantor due or payable to the Third National Bank," it is evident from the facts of this case, referred to any balance that was due after the exhaustion of the stocks held as collateral. This language did not change the rights or duties of the parties which then existed. Without this language unquestionably the bank would have

594

sold the stocks it then held and credited the proceeds of the sale on the notes and the balance due would have been paid out of the insurance which was then pledged to it.

We are of the opinion that the insured did not intend to abrogate the rights of the beneficiaries by making the assignment of the policies except as to any balance due on his debt at the bank after applying the proceeds of the sale of the stock.

The rights of the Trustee for the mother and daughters of the deceased as to the insurance are superior to the rights of the Executor of the insured's estate.

Undr the statute, Code, Section 8456, the rights of the beneficiaries of the insurance policies are preferred over the rights of creditors and while the insured had the right to dispose of the proceeds of his insurance policies as he saw fit it must be done by apt and conclusive language. This exemption is valid as against creditors existing at the inception of the insurance even though the insured may have been then and may have continued to be insolvent, devoting his entire estate to the payment of insurance premiums. This insured, however, had the right to assign the policies to the bank as collateral security for his debt. See Nashville Trust Co. v. First Nat. Bank, 123 Tenn. 617, 134 S. W. 311. This assignment was entitled to a preference over the beneficiaries to the extent that the proceeds of the sale of the stock attached to the notes failed to satisfy them, but not to the extent of preferring the Executor of the estate, which was liable for the debts of the deceased, over the beneficiaries of the trust.

The insured under the facts of this case did not intend to enrich his estate at the expense of the beneficiaries of his insurance policies, but only to assign the policies as

additional security to be used in the event the collateral attached to the notes was not sufficient to satisfy them. He was speculating in the stock market and it is evident that to strengthen his position with the bank and enable him to borrow money to buy stocks he assigned the insurance as a general collateral to make up for any balance that may be due by his estate after the specific collateral had been exhausted. He owed and now his estate owes the debt, not the Trustee or the beneficiaries. The Trustee owns the insurance money subject to the lien of the bank for this balance due after the sale of the stocks. The assignment did not extinguish the rights of the Trustee but was only an encumbrance on these rights. The rights of the Trustee in the insurance money are superior to the rights of Executor.

In Vol. 41, American Jurisprudence, page 583, it is said:

"The use of the term 'collateral security,' when the debtor transfers to his creditor an article of value or an evidence of debt, it intended to express that it is not received in payment of the principal debt, and that it is not an additional right to which the creditor is absolutely entitled. It is merely a concurrent security for another debt, whether antecedent or newly created, and is designed to increase the means of the creditor to realize the principal which it is given to secure."

Again in 35 American Jurisprudence on page 396 it is said:

"A beneficiary of an insurance policy pledged by the insured to secure a debt has, it seems, a right to require the creditor to resort first to other collateral, although this result will not follow where the creditor is named by the insured as beneficiary with a proviso that the pro-

ceeds of the policy over and above the amount required to satisfy the debt shall be paid to others."

The transactions of the insured with the Bank as shown of this record over a long period of years indicate that the insured was speculating by buying stocks. He did not buy stocks with the intention of making a permanent investment but only hoping to increase his estate by possible profits in his transactions. He procured the insurance to keep for the benefit of his mother and his daughters. His intention undoubtedly was that a sale of the stocks bought with the money borrowed should pay the debt and if not, any balance was secured by the insurance.

The deceased created the debts, his estate owes them and there is no equity in the contention of the Executor that the Trustee for the mother and daughters should be required to pay them.

As we understand the record, under a decree in the cause the proceeds of the insurance policies have not been appropriated and are being held subject to the orders of the Court. Therefore we do not discuss the doctrine of subrogation.

The assignments of error are sustained and the decree of the Chancellor is reversed.

The proceeds of the sale of the stocks will be credited on the notes and any balance remaining due there on will be paid out of the insurance money. The remainder of the proceeds of the insurance policies will be paid to the Trustee.

The costs of the appeal will be paid by the Executor and the costs of the Chancery Court as decreed by the Chancellor.

Reversed.

Felts and Hickerson, JJ., concur.