Chad SHAFFER, d/b/a Rawlins Finance Co., Appellant, (Plaintiff below),

v.

Margaret A. DAVIDSON, Appellee (Defendant below).

Margaret A. DAVIDSON, Appellant, (Defendant below),

v.

Chad SHAFFER, d/b/a Rawlins Finance Co., Appellee (Plaintiff below).

Nos. 3655, 3656.

Supreme Court of Wyoming.

Sept. 10, 1968.

K. W. Keldsen, Rawlins, for Chad Shaffer.

Harold M. Johnson, Rawlins, for Margaret A. Davidson.

Before HARNSBERGER, C. J., and GRAY, McINTYRE and PARKER, JJ.

Mr. Chief Justice HARNSBERGER delivered the opinion of the court.

Both parties have appealed from a district court judgment finding Margaret Davidson indebted to Shaffer for the balance of $199.70 due upon a $200 promissory note, plus interest thereon in the sum of $55.92, and attorney fees of $60.00, but setting off against those amounts totalling $315.62, the sum of $200 as the value of an automobile mortgaged to Shaffer as security for the payment of the note and giving judgment in favor of Shaffer for the net difference of $115.62.

Mr. Shaffer's appeal will be considered first.

The facts as determined by the trial court, either upon undisputed evidence or substantial evidence favorable to the suc-cessful party, may be summarized as follows.

Mrs. Davidson was an accommodation or co-maker of the note which was signed by the borrower, one Russell Nank. Nank as owner, together with Mrs. Davidson, executed and delivered to Shaffer as security for payment of the note a chattel mortgage upon an automobile being purchased by Nank with the proceeds of the loan from Shaffer to Nank.

Nank borrowed from Shaffer the $200, for which the note was given, in order to pay off an existing chattel mortgage against the automobile and procured Mrs. Davidson as an accommodation or co-maker of the note. Nank gave Shaffer his chattel mortgage upon the car, which mortgage Mrs. Davidson also signed. Thereupon Nank procured the vehicle's certificate of title from the holder of the pre-existing chattel mortgage, and Nank delivered that certificate of title to Shaffer. Shaffer neither filed the chattel mortgage upon the car nor did he deliver the certificate of title to the proper officer to enable endorsement of the chattel mortgage being placed thereon.

Nank sold the car and disappeared, and neither he nor the car could be found.

With the absence of notice to Nank's purchaser of the vehicle's being subject to any mortgage or other lien, Mrs. Davidson was deprived of the security she would have if the chattel mortgage had been timely filed, the certificate of title of the automobile delivered to the proper public officer, and a notation of the existence of the chattel mortgage encumbrance endorsed upon it. Had this been done, and then Mrs. Davidson required to pay the note, she could have received reimbursement from any monies obtained through foreclosure and sale of the mortgaged vehicle.

Under these facts, the questions presented to the trial court were (1) Was Shaffer required to afford Mrs. Davidson the protection of whatever security the chattel mortgage provided her? and (2) Was Shaffer's failure to record the chattel mort-

gage and deliver the certificate of title of the mortgaged vehicle to the proper officer for notation of that mortgage upon the certificate of title such an impairment of collateral as discharged her liability as accommodation or co-maker of the $200 note?

Shaffer contends the methods of discharge of an accommodation maker provided under the Uniform Commercial Code are exclusive and that it contains no provision for the discharge of an accommodation maker under the circumstances of this case because the term "collateral" as used in the code refers to the mortgaged vehicle itself and not to a "security interest" in the vehicle, citing § 34–3–606, W.S.1957 (1967 Cum.Supp.), which reads:

"Impairment of recourse or of collateral. —(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

*　　*　　*　　*　　*　　*

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Referring further to the code, this appellant also sets forth the official code comment as set forth in 1 Anderson's Uniform Commercial Code, § 3–606:1, pp. 745, 746 (1961), regarding the above-quoted portion of the code, which reads as follows:

"5. Paragraph (b) of subsection (1) is new. The suretyship defense stated has been generally recognized as available to indorsers or *accommodation* parties. As to when a holder's actions in dealing with collateral may be 'unjustifiable', the section on rights and duties with respect to collateral *in the possession* of a secured party (Section 9–207) should be consulted." (Emphasis supplied.)

Section 34–9–207, W.S.1957 (1967 Cum. Supp.), reads:

"Rights and duties *when collateral is in secured party's possession.*—(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an in-

strument or *chattel paper* reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed." (Emphasis supplied.)

In our view, § 34–9–207 is of assistance to Mrs. Davidson. She was entitled to have Shaffer exercise reasonable care in his custody and possession of the chattel mortgage and certificate of title and to take the steps necessary to preserve her rights. This would include the proper filing of the chattel mortgage and the delivery of the mortgaged property's certificate of title to the proper official in order that notation of the mortgage encumbrance be endorsed thereon.

We fail to find in Article 3 of the code, of which § 34–3–606 is a part, any definition of the term "collateral" either expressly stated or included by reference. Although counsel quotes § 34–9–105(1) (c), W.S.1957 (1967 Cum.Supp.), which reads:

"(c) 'Collateral' means the property subject to a security interest, and includes accounts, contract rights and chattel paper which have been sold,"

as justifying his thesis that under the code "collateral" means the property, i. e., the thing itself as distinguished from only a "security interest" in such property, the basic error in this premise and conclusion is twofold: first, because § 34–9–105(1) is limited in its application to Article 9, inasmuch as its prefatory sentence says explicitly *"In this article* unless the context otherwise requires" (emphasis supplied); and second because, even though that definition be deemed applicable, it definitely says collateral includes "chattel paper." The fact that this is followed by the words "which have been sold" may not fairly be interpreted to be a limitation upon "chattel paper" which was initially given as security for the repayment of a debt.

Appellant Shaffer's counsel admits being unable to find any authority for his attempted distinction between collateral in the sense of being the physical thing itself and a security or encumbrance interest in

that property. This in itself indicates the doubtful quality of his theory.

■ In the absence of a clear statutory definition in the code to the contrary, the plain, ordinary, and usual meaning of that word is to be accepted. Ballentine's, Law Dictionary With Pronunciations (2d Ed. 1948), p. 229, defines "collateral" in these words:

"There is no technical legal definition of the word distinct from its common signification. It is an additional security for the performance of the principal obligation, and, on the discharge of the latter, it is to be surrendered. See Seanor & Bierer v. McLaughlin, 165 Penn. 150, 32 L.R.A. 467, 472, 30 Atl.Rep. 717."

Baldwin's Century Edition of Bouvier's Law Dictionary (1926), p. 183, calls it "That which is by the side, and not in direct line. That which is additional to or beyond a thing."

In similar kind, Ballentine, at page 231, defines "collateral security," as:

"A concurrent security for another debt, whether antecedent or newly created, and is designed to increase the means of the creditor to realize the principal which it is given to secure. It is subsidiary to the principal debt; running parallel with it, collateral to it; and when collected is to go to the credit of the principal debt, or if the principal debt be paid off, the debtor is entitled to the restoration of the collateral security. 41 Am.Jur. 583."

Words and Phrases, 7A, p. 138 (Perm. Ed.), simply and concisely says " 'Collateral' means secondary or subsidiary. Smith v. Coleman, 35 S.E.2d 107, 112, 184 Va. 197," and at p. 224, " 'Collateral security' is merely a concurrent security for another debt, whether antecedent or newly created, and is designed to increase the means of the creditor to realize the principal which it is given to secure. Third Nat. Bank v. Hall, 209 S.W.2d 46, 50, 30 Tenn.App. 586."

Section 34-3-606, speaks simply of impairment of any collateral for the instrument given. In the instant matter the instrument was the $200 promissory note. The collateral was the chattel mortgage, not the motor vehicle itself.

From what has been pointed out, it is clear that the chattel mortgage in this case was "collateral" and was subject to the provisions of § 34-3-606 of the code. Hence, if Shaffer unjustifiably impaired the efficacy of that mortgage and if Mrs. Davidson was entitled to its protection, Mr. Shaffer must be held to have discharged Mrs. Davidson from liability.

Section 34-9-203, W.S.1957 (1967 Cum. Supp.), provides in pertinent part:

" * * * a security interest is not enforceable against the debtor or third parties unless

\* \* \* \* \* \*

"(2) A transaction, although subject to this article, is also subject to * * * the laws pertaining to certificates of title to motor vehicles (article 2 of chapter 13 [sic 3] of title 31, Wyoming Statutes, 1957), and in the case of conflict between the provisions of this article and any such statute, the provisions of such statute control. * * *."

The State statute referred to appears as § 31-37, W.S.1957, C.1967. Its first three paragraphs provide that (a) the owner of a motor vehicle shall not sell or transfer his interest unless having secured a certificate of title and complying with the provisions of the section, (b) the owner who sells or transfers his title or interest shall endorse an assignment and warranty of title upon the certificate of title with a statement of all liens and encumbrances thereon and deliver the certificate of title to the purchaser at the time of delivering the vehicle, and (c) the transferee "shall, within ten (10) days present such certificate, endorsed and assigned, to * * * the county clerk * * * and receive a new certificate of title for such vehicle." Paragraphs (d) and (e) are immaterial here. It therefore becomes apparent our statutes are not in anywise in conflict with § 34-9-203, or with § 34-3-606 of the commercial

code, which last-named section expressly declares, "(1) The holder of [an instrument] discharges *any* party to the instrument to the extent * * * the holder * * * (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or *any person against whom he has a right of recourse.*" (Emphasis supplied.)

The evidence shows Shaffer not only accepted the promissory note but also the chattel mortgage upon the motor vehicle given by Nank and Mrs. Davidson as security for the repayment of the $200 borrowed by Nank, and that Shaffer was given the certificate of title for the mortgaged vehicle. When Shaffer failed or neglected to do that which the code required him to do in order that the security placed in his hands became available for the protection of the accommodation maker of the promissory note, Shaffer discharged Mrs. Davidson from her obligation and erased her debt to him.

The appeal of Shaffer from that portion of the court's judgment which found Mrs. Davidson entitled to a credit of $200 against the balance of her obligation upon the $200 promissory note is without merit and that portion of the judgment is affirmed.

With respect to Mrs. Davidson's appeal from that portion of the court's judgment which awarded Shaffer $55.92 interest, and attorney fees of $60, we take note of the further fact that Shaffer claimed only $199.70 to be the unpaid balance due upon the note as of the date he brought his action. As we have already found all liability of Mrs. Davidson upon the $200 promissory note had been discharged by Shaffer's impairment of the security interest in the mortgage, only interest accruing upon any unpaid balance of the note remaining after applying the value of the impaired or lost mortgaged property would be allowable. Similarly, any allowance of attorney fees would be contingent upon there being due and owing some amount to Shaffer from Mrs. Davidson at the commencement of his action.

As a result of our holding that Shaffer discharged Mrs. Davidson from liability to the extent of the value of the mortgaged security, if there was no error in the court's determination that the mortgaged car was of the value of $200, the $199.70 claimed by Shaffer to be the unpaid balance due upon the note at the commencement of his action being less than the $200 value lost to Mrs. Davidson, she owed Shaffer nothing, and under those circumstances neither interest nor attorney fees could properly be adjudged against her.

The evidence is clear that the mortgaged vehicle could not be found. It was therefore impossible to have it sold and its proceeds applied to payment of the debt.

There was a proper foundation laid to enable a witness, a salesman and dealer in cars who was permitted to testify, to give his opinion that the market value of the vehicle was $175 to $200. In the absence of evidence to the contrary, the court was entitled to accept such testimony and find the value of the missing car to be $200, as it did. There was no error in this.

The judgment of the trial court that Mrs. Davidson have a set-off of $200 against her liability to Shaffer upon the promissory note is affirmed. The judgment of the trial court that Shaffer have judgment of $115.62, plus interest from date of judgment, against Mrs. Davidson is reversed, and the trial court is directed to enter judgment against Shaffer and in favor of Mrs. Davidson.

Affirmed in part and reversed in part with instructions.

McINTYRE, Justice (dissenting).

It has been difficult for me to understand on what basis my colleagues persist in saying, "Shaffer claimed only $199.70 to be the unpaid balance due upon the note as of the date he brought his action."

Unfortunately the pretrial order, which is referred to in testimony, does not seem to be in the record on appeal. However, I have read and reread plaintiff's complaint.

It clearly alleges in allegation No. 2 that defendant owes plaintiff the sum of $199.70 on the note, together with reasonable attorney fees in the sum of $60.00, "interest and costs." Also, in his prayer, plaintiff demands judgment against defendant in the sum of $199.70, attorney fees in the sum of $60.00, "interest and costs."

In its judgment the court found that plaintiff was entitled to recover $199.70, "plus interest in the sum of $55.92," and attorney fees in the sum of $60.00. It then gave defendant a set-off of $200.00 for the value of the automobile, leaving a balance to the plaintiff of $115.62.

We all dislike dissents, but when a partial reversal is predicated on what the dissenter conceives to be an erroneous representation of the record, it seems to me fairness demands that the minority view be expressed.