**Thomas C. STAPP and Shirley S. Johnson, Complainants-Appellees,**

v.

**Hazel Stapp STOKES, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section.

Oct. 27, 1972.

Certiorari Denied by Supreme Court March 5, 1973.

Alexander W. Cortner, Marks & Fleming, Clarksville, for defendant-appellant.

James C. Cunningham, Cunningham & Mitchell, Clarksville, for complainant-appellees.

## OPINION

SHRIVER, Presiding Judge.

This is a suit for contribution based on an assignment which was given as collateral security for the payment of a joint promissory note of the defendant, Hazel Stapp Stokes, and her husband, now deceased, Rube D. Stapp. Counsel for defendant-appellant in his Brief and Argument states as follows:

"The question in this case is:

Did the decedent and the defendant intend for decedent's interest in the Chamber of Commerce note to be a primary source or fund for the payment of the note they executed to the First Trust and Savings Bank?

Complainants contended that the assignment was only security or collateral for payment of the Bank note and that defendant should contribute one-half of the $23,000.00 paid thereon, less her one-third distributive share.

Defendant contends that the assignment, in addition to being collateral or security, designated decedent's interest in the Chamber of Commerce note as a primary source or fund and a means of

payment of the Bank note, thus relieving her of contribution."

The Chancellor resolved the issue in complainants' favor, holding that the assignment was a pledge as collateral security to the principal debt and not an assignment of decedent's interest in the Chamber of Commerce note.

From the foregoing decision the defendant duly perfected her appeal to this Court and assigned errors.

## ASSIGNMENTS OF ERROR

There are two assignments, as follows:

"I. The Chancellor erred in not finding that, as between the decedent and the defendant, they intended by the assignment for decedent's interest in the Chamber of Commerce note to be a primary source or fund and a means of payment of the Bank note, thus relieving defendant of contribution.

II. The Chancellor erred in disregarding the intention of the assignment and premising his decision for contribution on the proposition that, although it was called an assignment, the instrument was a pledge as collateral security for payment of the Bank note and not an assignment."

After hearing the case, Chancellor W. M. Leech took the case under advisement and, on January 10, 1972, filed a carefully considered and well reasoned opinion in which he set forth the facts in the case and his conclusions of law, as follows:

## CHANCELLOR'S OPINION

"This is a suit for contribution and is before the Court on motion of both parties for summary judgment.

Excellent briefs have been filed by both parties and the facts as presented by the pleadings and the issues involved are fully set forth in complainants' brief as follows:

'The complainants are the children of Rube D. Stapp who died intestate July 22, 1965 and the defendant is his widow, being his second wife. The defendant and Rube D. Stapp had no children born of their marriage. Since his death the defendant has remarried and is now Hazel Stapp Stokes. The complainants and the defendant were each entitled to one-third of his personal estate.

'The land on which the residence occupied by Rube D. Stapp and the defendant was located had been devised to them by J. C. Stapp, his uncle. In order to finance the cost of building a new residence on said land Rube D. Stapp and the defendant borrowed $24,500.00 and later an additional $6,500.00,* making a total of $30,000.00 from the First Trust & Savings Bank, Clarksville, Tennessee, and executed their promissory note to the Bank for that amount. Instead of requiring them to execute a deed of trust on the land to secure payment of the note, Ben Kimbrough, President of the Bank, who handled the loan, accepted as security an assignment to the Bank of Rube D. Stapp's 73.81 per cent interest in a note executed by the Clarksville Chamber of Commerce payable to J. C. and Tom Stapp, his uncles, which was bequeathed to him by J. C. Stapp, the surviving uncle. The defendant joined in this assignment. [Affidavit of Ben Kimbrough; Exhibit D. to complaint]

'At the death of Rube D. Stapp, the principal balance owing on the bank note was $20,000.00. There had been credited on the note a payment of $7,500.00 on February 15, 1965 from the proceeds of the sale of a portion of the land by Rube D. Stapp and the defendant to an oil company, and a payment of $2,500.00 on May 21, 1965 from a payment made on the Chamber of Commerce note, which left the principal balance of $20,000.00.

* [Apparent mistake in amount—there is no question, however, as to the total of $30,000.00]

'The interest of Rube D. Stapp in the Chamber of Commerce note was the principal asset of his estate. There were five remaining annual principal installments of $9,776.70 each, or a total of $48,883.50, owing on said note at the time of his death and his estate was entitled to 73.81 percent of that amount, or $35,080.91, plus interest. [Exhibit D to complaint] As the payments were made on the Chamber of Commerce note, Rube D. Stapp's interest therein, or rather the interest of his estate therein, was credited on the Bank note to the extent of the respective annual payments becoming due thereon, with the balance going into the estate until the balance of the Bank note was paid, and when settlement of the estate was made November 25, 1969, over four years after his death, by the administrators, one of whom was the defendant, there was only one installment due on the Chamber of Commerce note, and settlement of this installment was made by assigning the same to the three next-of-kin by the administrators. Thus, it is apparent that the estate was not settled until after the bank note, for which the defendant was jointly liable, was paid out of the estate's interest in the Chamber of Commerce note, which, of course, the assignment provided. A total of $23,000.00 was paid on the bank note from the estate in this manner, including interest. Payment of the bank note cleared any lien against the land and residence, title to which was taken absolutely by the defendant as surviving tenant by the entirety.'

The complainants insist that under these circumstances the defendant has been enriched unjustly at their expense and has reaped all the benefits of the estate to her advantage without accounting for her portion of the obligation paid by the estate, and to that extent the estate and their distributive shares therein have been reduced accordingly. It is their contention that the defendant was jointly obligated as a comaker of the note to the Bank and that the assignment was only security or collateral for payment of the note, and under the doctrine of contribution, the defendant should be charged with one-half of the amount paid on the note out of Rube D. Stapp's interest in the Chamber of Commerce note which was an asset of his personal estate, less her one-third distributive share, as one of the next-of-kin.

The defendant claims that because Rube D. Stapp executed the assignment in which the defendant joined, she was entitled to all benefits therefrom, including payment of the Bank note out of Rube D. Stapp's interest in the Chamber of Commerce note, and, therefore, she is relieved from making contribution.

The question involved under the admitted facts depends upon the nature of the assignment of Rube D. Stapp's interest in the Chamber of Commerce note and to determine this question the instrument as a whole must be examined.

If the instrument was only security or collateral for the payment of the note, the complainants should prevail. The position of the defendant is stated as follows: 'The assignment was a contract by which the First Trust and Savings Bank was to receive and did receive the interest of Rube Stapp in the Chamber of Commerce note to the extent necessary for payment of the bank note. It was a means of payment and not a mere pledge or security. The bank acquired the interest of Rube D. Stapp in the Chamber of Commerce note upon the execution of the assignment and its right to the proceeds were not contingent upon default in payment of the bank note nor upon any other condition.' If this statement is correct, the defendant should prevail.

In Vol. 6, Am.Jur.2d, under assignments, Sec. 1, page 186, it is stated:

'The word assignment is sufficiently comprehensive to include the transfer of all kinds of property and property rights and is sometime used synonymously with "grant" so as to operate as a conveyance of the title to real property, but ordinarily it is limited in its application to the

transfer of intangible rights, including contractual rights, choses in action, and rights in or connected with property as distinguished from the property itself. *It may be observed that while every assignment is a transfer, not every transfer is an assignment.'* [Emphasis added]

The instrument whereby the interest of Rube D. Stapp was transferred in the Chamber of Commerce note to the First Trust and Savings Bank is in the record as Exhibit 'D' to the original bill of complaint and shows on its face the purpose for which the instrument was executed. The fact that it is called an assignment does not make it one as defined in law. As stated above, 'Every assignment is a transfer, but not every transfer is an assignment.'

The instrument states: 'This assignment is made for the purpose of securing the payment of a note of even date herewith' and then describes the note to the bank.

The privilege of prepayment was reserved. The instrument also shows that the money was borrowed for the purpose of building a house on property owned by the defendant and her husband and provided that if the property should be sold the note *immediaetly* became due.

In 41 Am.Jur., under Pledge and Collateral Security, Sec. 2, page 583, 'collateral security' is defined and discussed as follows:

'The use of the term "collateral security," when the debtor transfers to his creditor an article of value or an evidence of debt, is intended to express that it is not received in payment of the principal debt, and that it is not an additional right to which the creditor is absolutely entitled. *It is merely a concurrent security for another debt, whether antecedent or newly created, and is designed to increase the means of the creditor to realize the principal which it is given to secure. It is subsidiary to the principal debt, running parallel with it, and collateral to it, and when collected it is to go to the credit of the principal debt, or if the principal debt is paid off, the debtor is entitled to the restoration of the collateral security.* The delivery of a chose in action as security for a debt constitutes a pledge. Although perhaps it is true that every transfer of an article of value for the purpose of securing the payment of an obligation due the transferee may entitle such article to be called a "collateral security," yet the term as generally used is much more limited in its signification, and is applied to incorporeal personalty. The usual subjects of transfer as collateral securities are choses in action, whether negotiable or not, certificates of stock in private corporations, bills of lading, and warehouse receipts. These, even when not in all respects negotiable, are transferable by indorsement and delivery, and, when indorsed and delivered, vest in the indorsee all the rights in the property possessed by the transferrer, so far at least as may be necessary to accomplish the purposes of the transfer, and constitute the most convenient as well as the most usual form of collateral security.

Under the laws of some states, every contract by which the possession of personal property is transferred as security only is held to be a pledge.' [Emphasis added]

The above statement is quoted with approval in Third National Bank, et al. v. Hall, et al. [30 Tenn.App. 586] 209 S.W.2d 46, 50.

When the instrument as a whole is examined, it is a pledge as collateral security to the principal debt and not an assignment of R. D. Stapp's interest therein.

Since the estate of R. D. Stapp has paid the entire amount of the note that was due at the time of his death, the case of Commerce Union Bank v. Weis, et al., 27 Tenn.App. 433, 181 S.W.2d 764, controls.

In that case the holder of the indebtedness secured by the deed of trust on the real estate, which upon the death of the husband became the sole property of the widow, elected not to file a claim against the estate of the deceased husband, the co-maker, but to look to its security. In the case at bar, the note was paid from the personal estate of the deceased husband. If the Chamber of Commerce note had for some reason not been collectible, the Bank could have collected from the widow and she would have been entitled to contribution from the estate. Since the estate paid the principal debt, the heirs are entitled to contribution from her.

In the Weis case, supra, the Court said:

'Since the claim on this note is barred against the estate of George F. Weis and the widow is liable to the holder of the note for payment of the entire amount, we agree with the Chancellor that Mai E. Weis can maintain her cross action against the Executor for contribution and exoneration at the present time.'

The original Bill of Complaint is sustained and a decree granting the relief prayed for will be prepared and entered on the Minutes of the Court and this memorandum will be filed as a part of the technical record but need not be copied on the Minutes.

This the 10th day of January, 1972.

/s/ W. M. Leech

CHANCELLOR"

We concur in the conclusions of the Chancellor as set forth in his Opinion which was implemented by a decree filed January 26, 1972.

It results that the assignments of error are overruled and the judgment of the Chancellor in all things affirmed.

Affirmed.

PURYEAR and TODD, JJ., concur.