The FIRST NATIONAL BANK, GIDDINGS, Texas, Appellant,

v.

Walter HELWIG, Appellee.

No. 11804.

Court of Civil Appeals of Texas, Austin.

March 10, 1971.

Rehearing Denied March 31, 1971.

Allan I. Schneider, Giddings, Robert E. Perman, Smithville, for appellant.

Charles J. Sebesta, Jr., Caldwell, for appellee.

SHANNON, Justice.

This is a suit on a note by appellant, The First National Bank of Giddings, against appellee, Walter Helwig. The trial court entered judgment for appellant for $10,738.58, being one half of appellant's claim. We reverse the judgment of the trial court.

In 1959 Invader Manufacturing Company located in Giddings and began fabricating boats. Appellee was president of Invader until December, 1961 when he sold out his interest. At the same time, appellee co-signed two notes totaling $17,875.00 as surety for Invader in favor of appellant. As security, appellant took a chattel mortgage on all of the inventory and equipment of Invader while appellee took a second and inferior chattel mortgage on the same property.

In July of 1965 Invader was failing financially, and its management agreed "to turn over" to appellant all of the mortgaged property. However, appellant did not sell this property pursuant to the provisions of the chattel mortgage nor did it obtain actual possession, but rather it permitted Invader to continue in possession hoping that the financial difficulty could be solved. Appellee was aware of this arrangement and did not demand that appellant sell the equipment. Invader fared no better, and new management "took over" the plant, still using the mortgaged property. An unspecified amount of that property was destroyed by fire in December of 1965.

The court found that in June of 1966 appellant told appellee that a lawsuit would be filed against him as surety on the original notes unless some agreement could be reached. Appellee then on June 10, 1966 signed a note for $17,875.00 in his own name in favor of appellant. Appellee testified on trial that he signed the June 10 note as a favor to appellant to protect appellant against a charge-off by bank examiners. The June 10 note was renewed by appellee in 1967, and again in March, 1968, the latter one being the basis for this appeal.

Upon trial to the court, judgment was entered for appellant for one half the amount claimed. The court filed findings of fact and conclusions of law, and concluded, among other things, that there was adequate consideration for the renewal note.

Appellant has assigned one point of error [1] while appellee has assigned one cross-point.[2]

Appellee's position is that the appellant negligently failed to foreclose and dispose of the mortgaged property, and that as a result of such negligence the property was destroyed by fire. Appellee reasons further that appellant, in permitting the

---

1. "The error of the Court in failing to give judgment to Plaintiff for the entire amount sued on as the Court's findings has insufficient support in the evidence and law and is against the overwhelming preponderance of the evidence as a matter of fact."

2. "The trial court erred in granting judgment for exactly one-half the amount sued for because there was insufficient evidence to support such a decision."

security to be destroyed, released in full appellee's obligation on the note, and hence the renewal note was invalid for failure of consideration. Appellant's position is that any negligence involved was merely passive and did not serve to discharge appellee's liability on the note and hence the renewal note was supported by consideration. Additionally, appellant claims its forbearance in suing appellee was adequate consideration for the renewal note.

Many of the earlier cases stated that "passive negligence" of the creditor, resulting in damage to the secured property, would not serve to discharge the surety's liability on the note, while "active negligence" would effect a discharge of the surety's liability to the extent that the secured property was damaged.[3] Attempts to characterize the creditor's conduct as "passive" or "active" were hardly satisfactory. For example, a creditor's failure to record a chattel mortgage, ostensibly "passive" in character, was held to be "active" negligence.[4]

■ We think the better rule is simply that a creditor in possession of property securing a debt owes a duty of ordinary care to secure and preserve that property. Blocksom v. Guaranty State Bank & Trust Company, 251 S.W. 1025 (Tex.Com.App. 1923). If the creditor breaches that duty, resulting in the destruction of or damage to the security, the surety is entitled to be discharged from liability on the note to the extent of the reasonable value of such security or to the extent of the loss in value of the security. Blocksom v.

Guaranty State Bank & Trust Company, supra. If applicable to this case, V.T.C.A. Art. 3.606(a) (2) [5] of the Business and Commerce Code incorporates the standard suretyship defense based upon the creditor's unjustifiable impairment of the security, and Art. 9.207(a)[6] requires a duty of reasonable or ordinary care of the creditor in possession of the security. See 46 Tex.Law Rev. 453, 458 (Article by Barkley Clark, 1968).

While the record in this case is not entirely clear, we are satisfied that appellant had the security sufficiently under its control at the time of the fire so as to constitute "possession" within the above rule.

■ The trial court filed no findings as to whether appellant breached its duty of ordinary care regarding the security. The court did find that approximately one half of the security was destroyed by the fire, but there was no evidence in the record as to the value of the secured property after the fire, and consequently no findings were made as to that value. In the final conclusion of law the court candidly asserted that the judgment granting appellant one half of its claim was grounded not upon legal precedents, but rather on equitable principles.

Since we are satisfied that the case was not fully developed below and that the trial court did not apply the correct rules of law in rendering the judgment, the judgment of the trial court is reversed and the cause is remanded for new trial consistent with this opinion.

3. See: Ramsey v. Wahl, 235 S.W. 838 (Tex.Com.App.1921) ; First National Bank of Midland v. Powell, 149 S.W. 1096 (Tex.Civ.App.1912, no writ) ; First National Bank of Ft. Worth v. Brown, 172 S.W.2d 151 (Tex.Civ.App.1943, writ ref. W.O.M.).

4. Nunn v. Smith, 194 S.W. 406 (Tex.Civ. App.1917, no writ).

5. "*3.606(a) (2)* The holder discharges any party to the instrument to the extent that

without such party's consent the holder unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

6. "*9.207(a)* A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed."