## UNION PLANTERS NATIONAL BANK OF MEMPHIS, Plaintiff,

v.

### Ben MARKOWITZ and J. W. O'Donnell, Defendants.

#### Civ. No. C–77–2645.

United States District Court, W. D. Tennessee, W. D.

Feb. 14, 1979.
On Motion to Reconsider April 26, 1979.

530

Robert F. Miller, Patrick M. Ardis, Wildman, Harrold, Allen, Dixon & McDonnell, Memphis, Tenn., for plaintiff.

Robert C. Liddon, Jr., Heiskell, Donelson, Adams, Williams & Kirsch, Memphis, Tenn., for defendant Markowitz.

W. H. Fisher, III, Memphis, Tenn., for defendant O'Donnell.

Thomas P. Kanaday, Jr., Ellen K. Bronaugh, Farris, Warfield & Kanaday, Nashville, Tenn., for 3rd party defendant Kornman.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT BEN MARKOWITZ

BAILEY BROWN, Chief Judge.

Plaintiff brought this diversity action seeking payment of $98,274.71 plus interest from defendants under the terms of a guaranty agreement. Plaintiff has moved for summary judgment as to defendant Ben Markowitz, and Ben Markowitz has filed a cross-motion for summary judgment.

In June 1964, Markowitz Brothers, Inc., a subcontractor involved in the installation of heating and plumbing, executed a promissory note to plaintiff in the amount of $600,-000 plus six percent annual interest. On July 2, 1964, defendants, along with A. N. Kornman and I. D. Kuntz, signed a guaranty agreement jointly and severally guaranteeing the payment to plaintiff of all present and future debts owed to plaintiff by Markowitz Brothers. The agreement limited the liability of the guarantors to $600,000 plus interest. According to defendant Markowitz, Markowitz Brothers ceased doing business in 1968 after a decline in its financial position. As of December 4, 1967, bank records indicate that Markowitz Brothers had managed to pay off all but $102,962.21 on its original $600,000 indebtedness. Plaintiff subsequently received an

additional $4,687.50 from Markowitz Brothers' accounts receivable, reducing the outstanding balance to $98,274.71. That is the amount of principal still allegedly due and owing. On March 7, 1974, Markowitz Brothers, Inc. executed a new promissory note in the amount of $98,274.71 plus 10 percent interest running from September 3, 1974. This promissory note stated that the 1964 guaranty was pledged as "collateral security" for payment of the note. Plaintiff contends that the 1964 guaranty agreement remains in full force and that defendant Markowitz is liable as a guarantor of the remaining debt. Defendant Markowitz raises four primary defenses to the assertion that he is liable as a guarantor: (1) plaintiff's claim is barred by the statute of limitations; (2) plaintiff's claim is barred by laches; (3) plaintiff's claim is barred because plaintiff negligently failed to perfect its security interest in assigned accounts receivable from Markowitz Brothers, failed to attempt collection of the debt from Markowitz Brothers before Markowitz Brothers ceased doing business, and failed to file claims against the estates of co-guarantors Kornman and Kuntz who have died since the demise of Markowitz Brothers; and (4) plaintiff's claim is barred due to material alterations in the terms of the original $600,000 promissory note. Unless one or more of these defenses is valid, plaintiff is entitled to summary judgment since there appear to be no disputed issues of material fact.

## I. Statute of Limitations

Markowitz contends that the six-year statute of limitations provided by T.C.A. § 28–309 bars plaintiff's action. Markowitz reasons that the statute begins to run as soon as a cause of action against a guarantor accrues, and that the cause of action against him accrued when the principal obligation reached maturity without a renewal having been executed. Although Markowitz acknowledges that numerous renewals or extensions were executed, he points to one example where a renewal note matured by its terms on January 15, 1968 but was not renewed until March 15, 1968. He concludes that a cause of action thus accrued against him as of January 15, 1968, and that any action against him based on this debt of Markowitz Brothers was barred after January 15, 1974.

■■ At the outset, it is important to point out that the statute of limitations does not apply to the guaranty agreement itself. By its terms, the guaranty was "continuing, absolute and unconditional" until terminated in writing by the guarantors and until all prior debts were fully paid. Furthermore, the mere existence of the guaranty does not give rise to a cause of action, but rather a cause of action against the guarantors accrues only as each obligation of the principal debtor becomes due. Thus the statute of limitations applies independently to each obligation that is guaranteed, and the six-year limitations period runs on each cause of action separately.

■■ Even assuming that Markowitz is correct that a two-month delay in executing a renewal of the note that became due on January 15, 1968 created a cause of action against him as of that date, the most that can be said is that an action by plaintiff on the note of October 16, 1967 is barred by the statute of limitations. It is the law in Tennessee that execution of a new note acknowledging existing indebtedness waives the limitations period with respect to that indebtedness, so that a new limitations period begins to run from the time of the renewed note. *First National Company v. Commissioner of Internal Revenue,* 289 F.2d 861, 865 (6th Cir. 1961); *Hannah and McCord v. Hawkins,* 73 Tenn. 240, 243–244 (1880). Since a new promissory note was executed on March 7, 1974 for the amount of the existing indebtedness, and since the guaranty agreement was still in effect, plaintiff's cause of action for the amount sought in this suit did not accrue until payment on that note became due on September 3, 1974. In this light, the limitations period on this 1974 note does not expire until 1980. Thus, plaintiff brought its action well within the limitations period prescribed by T.C.A. § 28–309.

## II. *Laches*

■■ Defendant Markowitz asserts that plaintiff's claim is barred by laches "because as a result of its [plaintiff's] long, unexplained delay in asserting its claim, the circumstances of the parties have changed, the memory of facts has become dimmed and much material evidence may well have been lost." Since laches is an equitable defense, it is only available to a defendant when a plaintiff seeks some form of equitable relief. It is not a valid defense to an action brought solely at law. 27 Am.Jur.2d *Equity* § 154 (1966); 30A C.J.S. *Equity* § 113 (1965). It is clear that this action is one at law since plaintiff only is seeking recovery of a sum of money under the guaranty agreement. 27 Am.Jur.2d *Equity* § 112; 30 C.J.S. *Equity* § 27. Accordingly, plaintiff's claim cannot be barred by laches.

## III. *Negligent Impairment of Collateral and Recourse*

Defendant Markowitz contends that he is entitled to be relieved of his role as guarantor because plaintiff was negligent in not taking certain steps which might have substantially reduced Markowitz's liability. First, he states that plaintiff negligently failed to perfect its security interest in $866,267 worth of accounts receivable which were pledged to plaintiff by Markowitz Brothers as collateral for the $600,000 note at the same time as the guaranty agreement was executed. Markowitz contends that plaintiff lost priority to other creditors as a result of its negligent failure to perfect its security interest in these accounts and thus recovered only $4,687.50 from them. In addition, Markowitz says that plaintiff impaired his rights by failing to take action against Markowitz Brothers before the company ceased doing business in 1968 and by failing to file claims against the estates of two deceased co-guarantors.

Plaintiff does not seek to demonstrate that it actually exercised due care in these matters, but instead relies on the waiver provisions contained in the guaranty agreement. The agreement provides, in pertinent part:

. . . The liability hereunder shall in no wise be affected or impaired by any acceptance by said Bank of any security for or other guarantors upon any of said indebtedness, obligations and liabilities, or by any failure, neglect or omission on the part of said Bank to realize upon or protect any of said indebtedness, obligations or liabilities, or any collateral or security therefor . . . . In order to hold the undersigned liable hereunder, there shall be no obligation on the part of said Bank at any time to first resort to, make demand on, file claim against, or exhaust its remedies against the Debtor, any one or more of the undersigned, or other persons or corporations, their properties or estates, or to resort to and exhaust its remedies against any collateral, security, property, liens or other rights whatsoever.

Further down in the agreement, it is stated:

No act of commission or omission of any kind, or at any time, upon the part of said Bank in respect to any matter whatsoever, shall in any way affect or impair this guaranty.

It is evident that these provisions in the agreement purport to make the guaranty binding on the guarantors even if plaintiff acted negligently in the manner described by Markowitz. Thus, Markowitz can only have a valid defense based on plaintiff's negligence if he demonstrates that these waiver provisions are somehow invalid.

Markowitz cites good authority to the effect that the general rule discharges a guarantor to the extent of any loss caused by a creditor's failure to perfect a security interest. However, nothing in the authority cited by Markowitz indicates that this general rule cannot be waived by agreement. In fact, where a guaranty is absolute, as this one clearly is, several authorities have stated that a guarantor is *not* discharged by the fact that the creditor has failed to resort to collateral. 38 Am.Jur.2d *Guaranty* § 114 (1968); 38 C.J.S. *Guaranty* § 81 (1943). See *Fireman's Fund Insurance Company v. Joseph J. Biafore, Inc.*, 526 F.2d 170, 173–176 (3d Cir. 1975).

Defendant Markowitz's argument primarily rests on certain provisions of the Uniform Commercial Code (UCC), T.C.A. § 47–1–101 et seq. T.C.A. § 47–9–207 provides:

(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

Markowitz argues that this duty of reasonable care to preserve collateral cannot be waived by agreement according to T.C.A. § 47–1–102(3), which provides in part:

[T]he obligations of good faith, diligence, reasonableness and care prescribed by chapters 1 through 9 of this title may not be disclaimed by agreement . . . .

Even assuming that these provisions of the UCC are applicable to this case, we do not find that the language of these sections support Markowitz's view. The first sentence of § 47–9–207(1) essentially requires a secured party to use reasonable care not to destroy or injure collateral in his possession. Under § 47–1–102(3), this requirement may not be waived by agreement. The second sentence of § 47–9–207(1) adds the element that the duty of reasonable care requires that the secured party take steps to preserve his rights in that collateral *unless otherwise agreed*. We interpret this to mean that the duty of reasonable care does not require a secured party to preserve his rights in collateral when the parties agree otherwise. Here, the guaranty agreement clearly states that plaintiff need not take steps to preserve its rights in the collateral. Thus, plaintiff's obligation of reasonable care under § 47–9–207(1) was satisfied. Sec. 47–1–102(3) is not contrary to this conclusion since that section merely says that the standards of reasonable care prescribed by the UCC may not be disclaimed. Since we conclude that § 47–9–207(1) allows the standard of reasonable care prescribed in the second sentence to be altered by agreement, plaintiff has met the standard of reasonable care under that section and thus § 47–1–102(3) does not require any different result.

In addition, we conclude that Markowitz's contention is erroneous because we find the UCC inapplicable to the agreement here in question. By its terms, T.C.A. § 47–9–207 only applies to a "secured party," which is defined by T.C.A. § 47–9–105(i) as "a lender, seller or other person in whose favor there is a security interest." It is arguable that plaintiff is a secured party as to the guarantors, since the guaranty agreement in some sense "secures" the note of Markowitz Brothers. However, we conclude that a guaranty agreement does not in itself create a security interest since the guaranty does not secure the note by any specific personal property or fixtures of the guarantors. Rather, the guaranty agreement only obligates the guarantors to pay the creditor in the event of default by the principal debtor, and no personal property or fixtures of the guarantors are held by the creditor as collateral. In reaching this conclusion that the guaranty agreement does not create a security interest, we follow the lead of the United States Fifth Circuit Court of Appeals in *EAC Credit Corporation v. E. L. King*, 507 F.2d 1232, 1238 (5th Cir. 1975).

The inquiry under T.C.A. § 47–9–207 does not end here, however. Even though plaintiff was not a secured party as to the guarantors, plaintiff clearly was a secured party as to Markowitz Brothers by virtue of the fact that plaintiff held a security interest in the accounts receivable of Markowitz Brothers. Although not raised by the parties to this suit, the fact that plaintiff was a secured party as to the principal debtor presents the question of whether defendant Markowitz, as a guarantor, can invoke the impairment of collateral defense authorized by § 47–9–207. At first glance, it might appear that a guarantor could rely on this section even though it was not his own collateral that was impaired. Sec. 47–9–207(3) reads:

A secured party is liable for *any loss* caused by his failure to meet any obligation imposed by the preceding subsections but does not lose his security interest.

(Emphasis added.) Thus, defendant Markowitz might arguably fall within this literal language since he has allegedly suffered loss due to plaintiff's failure to protect its security interest. However, we do not believe that subsection (3) should be construed so broadly. The entire thrust of § 47–9–207 is to require a creditor to preserve collateral in his possession so as not to injure the person who has given that collateral. Thus, we read the phrase "any loss" in subsection (3) to mean any loss to the one who has provided the collateral. Accordingly, the provisions of § 47–9–207 do not apply to defendant Markowitz since the guaranty agreement does not itself create a security interest and since subsection (3) does not allow Markowitz to attack plaintiff's alleged failure to use reasonable care in protecting collateral provided by the principal debtor.

■ The section of the UCC under which a guarantor or other surety of a note usually raises an impairment of collateral defense is T.C.A. § 47–3–606. That section provides in part:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

.    .    .    .    .

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

There is no question that this section offers a defense to a guarantor who actually signs a negotiable instrument such as the note here. See White & Summers, *Uniform Commercial Code*, §§ 13–12, 13–13, 13–14 (1972). However, there is practically no authority on the question of whether continuing guarantors, who have not signed any particular note as guarantors, can raise the defense provided by this section. Once again, we conclude that defendant cannot avail himself of this section because a continuing guarantor is not a "party to the instrument" within the meaning of T.C.A. § 47–3–606(1). We believe that this conclusion is consistent with the different obligations imposed on the two types of guarantors. A guarantor who guarantees a specific note, which is also secured by collateral, is responsible solely for that note. When he becomes a guarantor, his obligations are tied up with that specific note and his agreement to become a guarantor might hinge upon the fact that the note is secured by collateral. Thus, the potential risk of a guarantor on a particular note may not be altered by the unjustifiable impairment of that collateral by the creditor. The circumstances of a continuing guarantor are far different, however. A continuing guarantor does not guarantee a particular note, but rather guarantees an overall indebtedness. A continuing guarantor is thus obliged to pay the debts of the defaulting principal whether those debts are secured by collateral or not. In short, a continuing guarantor cannot rely on the presence of collateral securing a particular note. As long as the continuing guaranty in this case was in effect, nothing prevented Markowitz Brothers from incurring new debts to plaintiff secured by no collateral whatever. Under these circumstances, the fact that the note in question here was secured by collateral was largely fortuitous from the point of view of the continuing guarantors. It follows that the plain language of § 47–3–606(1), limiting this defense to "any party to the instrument," should not be expanded to encompass continuing guarantors who are not parties to the notes themselves.

■ Since neither the impairment of collateral defense of T.C.A. § 47–9–207 nor of § 47–3–606 is available to defendant Markowitz, it follows that any prohibition on waiver of these defenses contained in T.C.A. § 47–1–102(3) is also inapplicable. Accordingly, since the guarantors in the agreement waived any obligations by plaintiff to preserve collateral and since nothing prohibits that waiver, we hold that plaintiff was not required to exercise due care in perfecting its interest in the accounts receivable of Markowitz Brothers.

■ As to his other impairment defenses, Markowitz has not made any showing that plaintiff had an obligation to first seek collection in full from Markowitz Brothers

while the company was still in business or to file claims against the estates of the other guarantors. And he certainly has not demonstrated that the clear waiver of any such obligations on the part of plaintiff was invalid in any way. Therefore, these defenses must fail as well.

### IV. *Material Alterations in Note's Terms*

The final argument of defendant Markowitz is that the numerous extensions given Markowitz Brothers to repay the original note plus the change in the interest rate due on the note from six percent to ten percent have materially altered the terms of the original note, thereby releasing the guarantors. Markowitz relies on T.C.A. § 47–3–118, which states in part:

The following rules apply to every instrument:

.  .  .  .  .

(f) Unless otherwise specified consent to extension authorizes a single extension for not longer than the original period.

Markowitz says that the original note was for a term of 90 days and that any extension or renewal beyond an additional 90 days releases the guarantors.

Once again, the clear language of the guaranty agreement supports plaintiff on this question. The agreement states:

The liability hereunder shall in no wise be affected or impaired by (and said bank is hereby expressly authorized to make from time to time, without notice to anyone), any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, exchange, change in, modification or other disposition of any of said indebtedness, obligations and liabilities, either express or implied, or of any contract or contracts evidencing any thereof, or of any security or collateral therefor.

Given this explicit waiver, plaintiff again must prevail unless Markowitz can demonstrate that the waiver is invalid for some reason. T.C.A. § 47–3–118(f) does not help Markowitz since nothing in that subsection says the single extension rule may not be waived. The section of the UCC normally relied upon by sureties who claim release due to an unauthorized extension is T.C.A. § 47–3–606(1)(a) (see White and Summers, *supra*, § 13–14), but we have already determined that a continuing guarantor such as Markowitz is not a "party to the instrument" within the meaning of that section. Even if we had concluded otherwise, that section would not aid Markowitz since it allows the holder of the instrument to expressly reserve his rights, as plaintiff has done here, and since the provisions of T.C.A. § 47–1–102, relied on heavily by Markowitz when he argued that plaintiff's obligation to protect collateral could not be waived, would not prevent the waiver here where no duty of good faith or care is involved.

Apart from the UCC, the authority relied on by Markowitz is inapposite since it merely states the general rule that a guarantor of a particular note is released by an extension of that note without his consent. No authority cited by Markowitz says that a guarantor is precluded from waiving his right to be released. Indeed, one case cited heavily by Markowitz specifically states that the creditor may expressly reserve his right of recourse against a guarantor notwithstanding an extension. *Mechanics' Bank & Trust Company v. Hood*, 126 Tenn. 443, 447, 150 S.W. 420 (1912). Furthermore, Markowitz's authority only refers to guaranties of particular notes, not to continuing guaranties. The reason for permitting the release of a guarantor of a particular note upon extension of note is stated in 38 Am. Jur.2d *Guaranty* § 81: "Such an alteration materially changes the obligation secured by the guarantor and, therefore, may be detrimental to him." That rationale does not apply to a continuing guaranty, since a continuing guarantor does not rely on the terms of a particular note. Markowitz Brothers was free to sign notes for any period of time and at any rate of interest, and the guarantors were obligated to guarantee such notes up to $600,000. Under these circumstances, Markowitz Brothers was also free to enter into new agreements with plaintiff extending its note at a higher

rate of interest, and the obligations of the guarantors were not changed thereby since the guarantors essentially guaranteed the payment of any debts Markowitz Brothers saw fit to incur. As the Tennessee Court of Appeals has said:

> The fact that renewal notes replaced the original note is of no significance because the defendant is obligated under his guaranty and not on the note. . . In this case the defendant is not a surety on a note, but he is a guarantor of any "indebtedness, obligations and liabilities" owing to the complainant . . . .

*First National Bank, Hope, Arkansas v. Foster*, 60 Tenn.App. 711, 717–718, 451 S.W.2d 434, 437 (1969).

Accordingly, since Markowitz has not demonstrated that a continuing guarantor could be released by an extension of a note and since he has not demonstrated in any event that his waiver was ineffective, we hold that Markowitz is not released as a guarantor by any extensions of the original promissory note either at the same or higher rate of interest.

## V. *Attorneys' Fees*

In its complaint, plaintiff seeks costs and attorneys' fees in conjunction with this action. The guaranty agreement expressly states:

> [T]he undersigned further agree to pay all expenses, legal and/or otherwise (including court costs and attorney's fees, paid or incurred by said Bank in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and in enforcing this guaranty).

Accordingly, plaintiff is entitled to reasonable costs and attorneys' fees incurred in seeking this judgment. Plaintiff may submit its accounting of costs and attorneys' fees to this court and to defendant Markowitz at any time before the conclusion of the remainder of this lawsuit.

## VI. *Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment is hereby GRANTED in full against defendant Ben Markowitz in the amount of $98,274.71 plus 10 percent interest running from September 3, 1974. Markowitz's cross-motion for summary judgment is accordingly DENIED. In addition, plaintiff is entitled to reasonable costs and attorneys' fees incurred as a result of this action.

The Clerk is directed to withhold entry of final judgment in this action until the amount of costs and attorneys' fees have been determined and until the remaining issues of this case have been resolved.

It is so ORDERED.

## ON MOTION TO RECONSIDER

On February 14, 1979, this court granted plaintiff's motion for summary judgment against defendant Markowitz in the amount of $98,274.71 plus interest. Defendant Markowitz has now moved this court to reconsider that order. A hearing on this motion was held on April 20, 1979.

Although Markowitz originally relied on several defenses to plaintiff's action under the continuing guaranty agreement at issue here, he now seeks reconsideration of only one aspect of our order. Specifically, Markowitz reiterates his position that he should be discharged from the guaranty agreement to the extent that plaintiff was unable to claim its interest in accounts receivable, assigned to plaintiff as collateral by the principal debtor, because of plaintiff's negligent failure to perfect its security interest in those accounts. In renewing this argument, Markowitz challenges this court's conclusion that T.C.A. § 47–9–207, a section of the Uniform Commercial Code (UCC), is inapplicable to the transactions involved in this case. Plaintiff, on the other hand, urges this court to stand by our original conclusion that no provision of the UCC applies to this guaranty agreement and that the agreement is instead governed by common law.

It is clear that the guaranty agreement itself expressly states in a number of ways that the guarantors will continue to be liable regardless of any failure by plaintiff to protect its interest in any collateral

pledged. Thus, the only question is whether these waiver provisions are invalid. As discussed in our previous order, Markowitz relies on T.C.A. § 47–1–102(3), which provides that the standards of "good faith, diligence, reasonableness and care" prescribed by the UCC may not be waived by agreement. Of course, in order to make § 47–1–102(3) applicable, Markowitz must show that at least one of these UCC standards applies to plaintiff in this case. Markowitz maintains that § 47–9–207(1) imposes a duty on plaintiff to protect its security interest in collateral assigned to it, and that § 47–1–102(3) bars plaintiff from waiving this duty by agreement.

█ In our order of February 14, we first stated that, even if the transactions here were covered by § 47–9–207, the second sentence of § 47–9–207(1) allowed the parties to vary by agreement any obligation on the part of the secured creditor to protect its security interest in the collateral pledged. We now agree with Markowitz that we applied this sentence incorrectly. The second sentence of § 47–9–207(1) reads: "In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed." Although the language of this sentence is somewhat ambiguous, we agree with Markowitz that the sentence only applies when an instrument or chattel paper is *itself* assigned as collateral. Since an account receivable is neither an "instrument" nor "chattel paper" under the definitions of T.C.A. §§ 47–9–105 and 47–9–106, we conclude that this sentence does not apply to the present case and hence does not, in and of itself, authorize the parties to waive any duty of care imposed on plaintiff.

█ In addition to our interpretation of the second sentence of § 47–9–207(1), however, we also held that § 47–9–207 simply does not apply to the situation involved in this case. More specifically, we held that the evident purpose of § 47–9–207 is to protect the owner of the collateral, not a guarantor such as Markowitz. Markowitz must also demonstrate that this conclusion was erroneous in order to reap the benefits of § 47–1–102(3), prohibiting waiver of any duty of care imposed by the UCC.

Markowitz seeks to show that the first sentence of § 47–9–207(1) imposes a duty on plaintiff to perfect its security interest in accounts receivable pledged as collateral. This sentence reads: "A secured party must use reasonable care in the custody and preservation of collateral in his possession." Markowitz urges that this sentence should be interpreted to require a secured party, such as plaintiff, to use reasonable care in protecting its security interest in collateral pledged to it. Markowitz further contends that his duty applies regardless of whether or not the collateral is actually in the secured party's possession. We conclude once again that the language and background of § 47–9–207(1) cannot reasonably support the interpretation advanced by Markowitz.

Markowitz correctly points out that at common law a guarantor who pays off an indebtedness to a creditor becomes subrogated to the creditor's rights against the principal debtor, and that a creditor's negligent failure to protect its security interest in collateral impairs the guarantor's right of subrogation. From this, Markowitz argues that our "narrow reading of Section 47–9–207(1) does not take into account the guarantor's right of subrogation, which underlies the section and is fundamental to the law of suretyship and guarantyship."

If Markowitz could somehow support his bold contention that consideration of a guarantor's subrogation rights "underlies the section," his case would be much stronger. However, Markowitz has offered us nothing to alter our prior view that § 47–9–207 was designed to protect the rights of the pledgor in his collateral, not the subrogation rights of guarantors. Indeed, Comment 1 to § 47–9–207 supports our view. Comment 1 reads in part:

> Subsection (1) states the duty to preserve collateral imposed on a pledgee at common law. See Restatement of Security, §§ 17, 18.

Section 18 of the Restatement of Security discusses the obligation of a pledgee of an

instrument to preserve the rights of the pledgor against third parties. This section has been embodied in the second sentence of § 47–9–207(1), which we have already determined to be inapplicable. Sec. 17 of the Restatement says that the pledgee of a *chattel* owes a duty *to the pledgor* of that chattel to take reasonable care of it. It seems clear that the first sentence of § 47–9–207(1) was designed to codify § 17 of the Restatement, and thus was meant to protect the pledgor from the physical destruction or deterioration of his chattel turned over to a creditor as collateral. Thus, we see no reason to read out the language that a creditor has a duty to preserve collateral "in his possession." It is further clear from both of these sections of the Restatement that any common law duty required by these sections was intended to run solely to the benefit of the pledgor of collateral, not to a guarantor. In sum, we conclude that the first sentence of § 47–9–207(1) was intended to protect a pledgor of collateral when he physically turns over possession of that collateral to the secured party. As such, that sentence does not apply to the accounts receivable pledged as collateral here, does not require a creditor to perfect a security interest in collateral, and does not protect a guarantor in any event.

Our view that § 47–9–207(1) does not apply to the facts of this case remains unaltered by the cases relied upon by Markowitz. Markowitz cites *First National Bank, Giddings v. Helwig*, 464 S.W.2d 953 (Tex. 1971), to support his proposition that the collateral need not be in the possession of the creditor for § 47–9–207(1) to apply. However, *Helwig* involved collateral in the form of physical property which was destroyed by fire. The Court of Civil Appeals of Texas held that the creditor had sufficient control over the property to give it constructive possession even though the debtor retained possession of the property with the creditor's consent. That is a far cry from this case where plaintiff did not have control over the accounts receivable themselves and where the accounts were not lost or destroyed. Moreover, *Helwig*

assumes without discussion that a guarantor of a specific note, at least, can invoke the protection of UCC § 9–207(1). Nothing in *Helwig* persuades us that this view is correct.

The case of *Shaffer v. Davidson*, 445 P.2d 13 (Wyo.1968), is also unpersuasive to this court. In that case, the principal debtor executed a chattel mortgage on a car, and delivered the chattel mortgage to his creditor. When the principal debtor subsequently sold the car and disappeared, the creditor sought payment from the guarantor who defended on the ground that the creditor negligently failed to record the chattel mortgage. The Supreme Court of Wyoming held for the guarantor under the Wyoming version of § 47–9–207(1). We believe that the Wyoming Supreme Court erroneously found the chattel mortgage *itself* to be the collateral at issue in that case, rather than the car. While chattel paper *can* be collateral under the definition of collateral in § 47–9–105(1)(c), that is only true in the situation in which the pledgor himself owns chattel paper which he turns over to a creditor as collateral. The instrument giving the security interest to the creditor, such as the chattel mortgage in *Shaffer*, is not itself the collateral but merely creates the security interest in the collateral. The Wyoming Supreme Court's conclusion that the creditor failed to preserve the chattel mortgage in its possession and that the creditor had a duty to the guarantor to do so under UCC § 9–207(1) is based on that court's erroneous classification of the chattel mortgage as collateral. Hence, we decline to follow the reasoning of *Shaffer*.

Markowitz relies most heavily on *National Bank of Detroit v. Alford*, 65 Mich.App. 634, 237 N.W.2d 592 (1975). In that case, the Court of Appeals of Michigan held that a creditor's failure to record a chattel mortgage in an airplane released continuing guarantors, such as Markowitz. In reaching this result, the Michigan court merely quoted the subsection equivalent to T.C.A. § 47–9–207(1), and then stated in very conclusory terms that the creditor breached its

duty to record the chattel mortgage, thereby impairing the guarantors' right of subrogation. Nowhere does the Michigan court discuss the purpose of UCC § 9–207(1). Rather, the Michigan court seems to rely on the policy that a creditor "should not be allowed to hold the guarantors liable" because of its own negligence. We do not find that this view changes our interpretation of the meaning of § 47–9–207(1). We note, in passing, that the guaranty agreement in *Alford* did not contain any explicit waiver with regard to the creditor's obligation to perfect its security interest in collateral. This fact may have led the Michigan court to dwell less on the purpose of UCC § 9–207(1) than it otherwise might have, since the creditor's negligent failure to perfect would likely have released the guarantors at common law absent an explicit waiver.

Since we conclude that defendant Markowitz has still failed to show that any provision of the UCC applies to the guaranty agreement in question, the waiver provisions of that agreement remain valid and binding. Accordingly, the motion by defendant Markowitz to reconsider our previous order granting summary judgment to plaintiff is hereby DENIED.

It is so ORDERED.