**FIRST CITY BANK, N.A., a National Banking Association, Plaintiff-Appellee,**

v.

**AIR CAPITOL AIRCRAFT SALES, INC., a Kansas corporation, and Gary R. Morgan, an individual, Defendants-Appellants.**

No. 85–2410.

United States Court of Appeals, Tenth Circuit.

June 19, 1987.

John P. Roberts, Edwards, Roberts & Propester, Oklahoma City, Okl. (David L. Crutchfield, with him on the brief), for plaintiff-appellee.

Dianne L. Smith, Tulsa, Okl., and Frank C. McMaster, Wichita, Kan. (Benjamin P. Abney, Tulsa, Okl., on the briefs), for defendants-appellants.

Before ANDERSON, TACHA and TIMBERS *, Circuit Judges.

TIMBERS, Circuit Judge.

Appellants Air Capitol Aircraft Sales, Inc., ("Air Sales") and Gary R. Morgan

* Of the United States Court of Appeals, Second Circuit, sitting by designation.

("Morgan"), collectively "appellants", appeal from a judgment entered June 17, 1985 in the Western District of Oklahoma, Lee R. West, *District Judge*, which, after a jury trial, awarded appellee First City Bank, N.A., ("the bank") $800,000 on its claim in a diversity action for breach of a guaranty agreement. The appeal also brings up for review the dispositions by the district court of certain pre-trial and post-trial motions.

On appeal, appellants claim, first, that the district court erred in denying their motion to dismiss for lack of personal jurisdiction; second, that the court abused its discretion in denying them leave to amend their answer in certain respects; and, third, that the court erred in not instructing the jury on impairment of collateral. Appellants also assert a multitude of other claims on appeal, all of which are patently frivolous, and none of which merits discussion.

We hold, first, that the court properly denied appellant's motion to dismiss for lack of personal jurisdiction; second, that the court did not abuse its discretion in denying appellants leave to amend their answer; and, third, that the court correctly refused to instruct the jury on impairment of collateral.

We affirm.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

The bank is a national banking association with its principal place of business in Oklahoma City, Oklahoma. Morgan is a citizen of Kansas. Air Sales is a Kansas corporation and has its principal place of business in Kansas.

Sometime prior to February 1983, Air Sales purchased a Lockheed Jet Star Aircraft ("the plane") through financing by the Farmers State Bank in St. Joseph, Mis-

souri.[1] In February 1983, appellants began negotiations to sell the plane to Air Capitol Aircraft Leasing, Inc., ("Air Leasing") so that Air Leasing could lease the plane to InAir Airlines ("InAir"), a Panamanian corporation. Air Leasing is an Oklahoma corporation with its principal place of business in Oklahoma City. The negotiations were conducted with Ricardo Bilonick and Robert Castano, who are principals of InAir.

InAir and Air Leasing needed financing for the transaction. Morgan telephoned a representative of the bank—B.F. "Smokey" Davidson—in order to arrange the financing. As part of the financing ultimately obtained, Morgan—individually and as representative of Air Sales—executed the continuing and unconditional guaranty agreement at issue in the instant case. That agreement was dated March 1, 1983 and was executed in Florida. It guaranteed the unlimited indebtedness of Air Leasing.

On March 9, 1983, Air Leasing borrowed $1,250,000 from the bank. Of that amount, $1,038,000.48 was wired to the Farmers State Bank to satisfy the loan it had made to Air Sales for the original purchase of the plane. The balance was deposited in Air Leasing's account at the bank. Air Leasing signed a promissory note to the bank for $1,250,000, which appellants guaranteed by virtue of the guaranty agreement.

Air Leasing stopped making payments on the promissory note when the United States Customs Service impounded the plane for carrying cocaine. After unsuccessful efforts to obtain payment, the bank commenced the instant action on March 28, 1984. The bank took possession of the plane on the same day. On April 2, 1984, a registered process server served Morgan by delivering a summons and a copy of the complaint to his stepson, Mitch Lousch, at Morgan's home in Wichita, Kansas. Aircraft Sales was served on April 4 at its corporate offices.

On April 18, 1984, appellants moved for an extension of time until May 1 in which to answer or otherwise plead. The motion was granted by an order entered April 19, 1984. Appellants filed no answer or other pleading by May 1. On May 8, the bank filed an application for entry of a default judgment. The clerk of the district court entered such a judgment against appellants.

Appellants filed a motion to set aside the default judgment on May 15, 1984. In an order entered June 5, 1984, the district court found under Fed.R.Civ.P. 55(c) that the default judgment had been entered improperly and granted appellants 15 days in which to seek relief pursuant to Fed.R. Civ.P. 60(b). Appellants filed a Rule 60(b) motion on June 15, 1984.

On July 10, 1984, appellants each filed a "Proposed Answer" together with a brief in support of their Rule 60(b) motion. By an order entered July 19, 1984, the court granted the Rule 60(b) motion. The court stated that "[t]he two Proposed Answers submitted in this action by the Defendants will be considered as Defendants' Answers and the issues will be considered by the Court as joined."

The bank completed discovery by August 24, 1984. Appellants conducted no discovery. On November 13, 1984, appellants each filed motions to amend their answers by adding affirmative defenses, a counterclaim against the bank, and certain third party defendants. On November 30, appellants filed a motion to dismiss the complaint for lack of personal jurisdiction.

By order entered February 7, 1985, the district court denied appellants' motion to dismiss, finding that both appellants had sufficient minimum contacts with Oklahoma.

On March 4, 1985, the court denied appellants' motions to amend their answers. The court stated that it had "reviewed the chronology of events in this lawsuit and has examined the defendants' latest submissions. In so doing the Court finds that the defendants' requests are untimely and that this matter will proceed to trial on the

---

**1.** The facts set forth in this opinion are from the evidence adduced by the bank at trial. Some facts are disputed by appellants.

issues as presented by the pleadings on file." Trial was set for June 10.

On April 30, 1985, appellants requested a 30 day extension of time within which to complete discovery and file motions. The court granted appellants 15 days by an order entered May 6, 1985. On May 31, well beyond the 15 day extension granted by the court, appellants filed an application to take "trial" depositions of two individuals—one in Florida, the other in Panama—on June 5 and 6. By an order entered June 3, the court denied the application. It observed that the application had been made after the discovery deadline and just shortly before the scheduled trial date. The court stated that appellants had neither cited any authority nor advanced any reason for granting the application so late in the proceeding.

Trial took place during the period June 10–14, 1985. The jury found for appellee in the amount of $800,000. Judgment was entered on the jury verdict on June 17, 1985. After numerous post-trial motions and rulings, appellants took the instant appeal on September 10, 1985.

For the reasons set forth below, we affirm the judgment of the district court.

### II.

### A.

Appellants assert two claims regarding personal jurisdiction. First, they claim that they had insufficient contacts with the State of Oklahoma to confer the court with jurisdiction over them. Second, Morgan claims that service on him was defective.

#### 1. *Minimum Contacts*

"Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state." *Yarbrough v. Elmer Bunker & Associates*, 669 F.2d 614, 616 (10th Cir.1982). When the bank commenced the instant action, Oklahoma's long arm statutes, Okla.Stat.Ann. tit. 12, § 187 (West Supp.1987) and § 1701.01 (West 1980), provided that a plaintiff's cause of action against a nonresident defendant must arise

out of the same acts which provide the basis for the court's exercise of in personam jurisdiction. *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1386–87 (10th Cir.1980). When appellants filed their motion to dismiss for lack of personal jurisdiction, however, a new long arm statute was in effect. That statute provides in relevant part:

"A court of this state may exercise jurisdiction on any basis consistent with the constitution of this state and the Constitution of the United States."

Okla. Stat. tit. 12, § 2004 F (1984).

In addressing appellants' claim of insufficient contacts, the district court applied § 2004 F. The bank argues that the court's application of that statute was proper. We agree. Under Oklahoma law, a statute that merely alters a remedy or procedure for enforcing a legal right applies retroactively and is applicable fully to actions pending at the time of the statute's enactment. *E.g., Gray v. Gray*, 459 P.2d 181, 186 (Okla.1969); *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District*, 464 P.2d 748, 756 (Okla.1968). Oklahoma courts deem jurisdictional statutes to be procedural and therefore are applied retroactively. *See Shelby-Downard Asphalt Co. v. Enyart*, 67 Okla. 237, 170 P. 708 (Okla.1918); *Magers v. Magers*, 645 P.2d 1039, 1040–41 (Okla.Ct.App.1978); *see also Hallowell v. Commons*, 239 U.S. 506 (1916) (statute vesting Secretary of Interior with jurisdiction over controversies surrounding Indian heirship held to be applicable retroactively). Since § 2004 F is a jurisdictional statute, Oklahoma courts would apply it retroactively. The statute became effective November 1, 1984. 4 Okla.Sess.Laws, Ch. 164, § 34 (1984). Appellants filed their motion to dismiss on November 30, 1984. We therefore hold that appellants' claim is governed by § 2004 F.

Under § 2004 F, whether the district court properly exercised jurisdiction over appellants must be determined under federal constitutional law. A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant

only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "The defendant's contacts with the forum State must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice." ' " *World-Wide Volkswagen, supra,* 444 U.S. at 292 (quoting *International Shoe, supra,* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940))). The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

█ In the instant case, the district court, after considering affidavits submitted by appellants and by the bank, held that appellants had "sufficient minimum contacts with this forum so that the maintenance of this suit does not offend 'traditional notions of fair play and substantial justice' and that the exercise of this Court's jurisdiction over these defendants would be consistent with both the Constitution of this state and the Constitution of the United States." (quoting *International Shoe, supra,* 326 U.S. at 316). We agree. Both Morgan and Air Sales had more than sufficient "minimum contacts" with Oklahoma to satisfy the demands of due process. Morgan initiated the contact with the bank by calling Davidson in Oklahoma to inquire whether the bank would be interested in financing the transaction. Thereafter Morgan went to Oklahoma City and met with Davidson in the bank's offices. They discussed the terms and conditions of the guaranty agreement. Moreover, Morgan and Air Sales had many prior business arrangements with the bank. At the time Morgan signed the guaranty agreement, Air Sales had a checking account at the bank. The bank made loans to Air Sales in September 1982 and April 1983 and to Morgan in June 1983. In short, it is clear that both Air Sales and Morgan had a continuing and substantial business relationship with the bank before and after the execution of the guaranty agreement. Finally, the promissory note of Air Leasing which led to appellants' liability under the guaranty agreement was executed and funded in Oklahoma City.

We hold that the district court properly denied appellant's motion to dismiss for lack of personal jurisdiction.

### 2. *Service*

Morgan claims that the service on him was defective since his stepson—Mitch Lousch—purportedly was not a resident of Morgan's home in Wichita, Kansas, and therefore that the district court lacked personal jurisdiction over him. He argues that, at the time service of a summons on him was attempted, service at defendant's usual place of residence on someone who did not permanently reside there was not effective, *citing Cleaves v. Funk,* 3 F.Supp. 804 (N.D.Okla.1933), *aff'd,* 76 F.2d 828 (10th Cir.1935); *Mayhue v. Clapp,* 128 Okla. 1, 261 P. 144 (Okla.1927); *Jackson v. Smith,* 84 Okla. 64, 200 P. 542 (Okla.1921). The bank argues that, even if service was defective, and even though Morgan raised his claim of defective service in his answer, he waived his defense by failing to include that ground for relief in his motion to dismiss.

We find it neither necessary nor appropriate to decide whether Morgan waived his claim of defective service by not pressing the defense in his motion to dismiss under Fed.R.Civ.P. 12(g). He raised his claim of defective service in his answer, but did not pursue the claim until April 30, 1985 when one of appellants' attorneys filed an affidavit to support the claim. No other proof was offered. In response to the affidavit, the bank filed an affidavit by the process server—George B. Pemberton—who handed the summons and complaint to Lousch. Pemberton stated that he had met with Lousch and Morgan's wife at Morgan's home in Wichita regarding another lawsuit on March 14, 1984; that Lousch had informed him at that time that

he lived at the Wichita home; and that on April 2 Pemberton returned to the home to serve the summons and complaint on Morgan in the instant action.

Morgan did not raise the claim again until the conclusion of the bank's case at trial of the instant case. The district court stated that it had found that it had personal jurisdiction over Morgan but that it would be willing to reconsider if Morgan presented evidence contrary to Pemberton's affidavit. Morgan presented no such evidence.

■ Under these circumstances, Morgan's claim is without merit. We hold that the district court correctly found that service was proper.

### B.

In their motions to amend their answers appellants sought to add a counterclaim against the bank for fraud and misrepresentation (alleging, alternatively, that Morgan's signature on the guaranty agreement was forged or that Morgan had signed the agreement before certain blank places had been filled in); to add certain affirmative defenses; and to assert a third party claim against the bank's president and another individual for fraud and for an accounting. The district court denied the motion on the ground that it was untimely. Appellants renewed their motion on the eve of trial. The court again denied it. The court at that time stated:

> "I think there has been issues that are known, and for more than a year now to the defendant, could have and should have presented if they intended to, in effect, in good faith rely upon them. They were not done in an appropriate and proper time.
>
> And this case has been scheduled for trial. It's been—adequate time to prepare for trial for both counsel has been made available. Simply counsel for the defendant has not, for any number of reasons, availed themselves of adequate opportunity to present whatever additional defenses they want to present in this case, and only, what the court considers belatedly, raise and assert issues that

should have, could have been presented earlier.

> I can't have the issues at a trial changed at the last moment, opening up large discovery matters, and completely departing from the pretrial discovery schedule for no apparent good reason. And the court doesn't intend to.
>
> If I have to try this case again, I'll try it again. I don't think the Appellate Court is going to require me to allow the sort of deviations from good order and justice that's required by our pretrial procedures to be disregarded to the extent they have been in this case. So we are going to trial."

Appellants claim that the court abused its discretion in denying both the original and renewed motions to amend. We disagree.

■ Absent consent of the bank, appellants could amend their answers only by leave of court. Fed.R.Civ.P. 15(a). Although such leave "shall be freely given when justice so requires", *id.*, whether to grant such leave "is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). *Accord, Triplett v. Leflore County,* 712 F.2d 444, 446 (10th Cir.1983). "An outright refusal to grant leave without any justifying reason appearing for the denial" is an abuse of discretion, but there is no abuse if the court relies on a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of amendment". *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In the instant case, the court denied appellants leave to amend after having "reviewed the chronology of events in this lawsuit and [having] examined [appellants'] latest submissions." The court found "that [appellants'] requests are untimely". By relying on the untimeliness of appellants' submissions, the court clearly was acting within the bounds of its discretion. *Foman, supra,* 371 U.S. at 182; *Triplett,*

*supra,* 712 F.2d at 446 (listing "undue delay" as a reason to deny leave to amend).

Appellants argue that untimeliness is insufficient and that the opposing party must also demonstrate prejudice. In their brief and at oral argument before us, appellants cited several cases to support this proposition. *Zenith, supra,* 401 U.S. at 330–31; *Triplett, supra,* 712 F.2d 444; *Childers v. Independent School District,* 676 F.2d 1338 (10th Cir.1982); *Mercantile Trust Co. National Assoc. v. Inland Marine Prods. Corp.,* 542 F.2d 1010, 1012 (8th Cir.1976). Only *Mercantile Trust* supports their argument. There the court stated that "[m]ere delay is not a reason in and of itself to deny leave to amend. There must be found some prejudice which would result to others if leave were to be granted." *Mercantile Trust, supra,* 542 F.2d at 1012. We of course are not bound by the Eighth Circuit's statement. In our view it conflicts with *Foman,* where the Court listed "undue delay" as a ground sufficient to deny leave. *Foman, supra,* 371 U.S. at 182. Moreover, we ourselves recently listed delay as an independent reason to deny leave to amend. *Triplett, supra,* 712 F.2d at 446.

■ We hold that a district court acts within the bounds of its discretion when it denies leave to amend for "untimeliness" or "undue delay". Prejudice to the opposing party need not be shown also.

■ Whether or not, had we been sitting as the trial court, we might have granted appellants' original motion to amend, we cannot say that the district court abused its discretion. Indeed, the court had sufficient reason to note that appellants had been dilatory: they were in default from May 8, 1984 until they filed answers on July 10, 1984; the bank had completed discovery before appellants even had begun; by an order entered August 22, 1984, the final pretrial conference previously had been set for September 5, 1984, two months before appellants filed their motions to amend on November 13, 1984 (the final pretrial conference actually was held on October 2, 1984).

We hold that the court did not abuse its discretion in denying appellants leave to amend their answers.

### C.

Appellants claim that the plane decreased in value while in the possession of the bank. As a result, they seek to be discharged to the extent that the collateral allegedly was impaired. Appellants sought a jury instruction to that effect. The district court declined to give it. On appeal, appellants claim that they were entitled to the instruction under two provisions of the Uniform Commercial Code ("UCC"), an Oklahoma statute, and the common law. We hold that appellants were not entitled to the instruction.

Appellants argue, first, that they were entitled to an impairment of collateral instruction under UCC § 3–606, Okla.Stat. Ann. tit. 12A, § 3–606 (1963). § 3–606 provides in relevant part:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

. . .

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Okla.Stat.Ann. tit. 12A, § 3–606.

The guaranty agreement in the instant case created a "continuing" guaranty. That is, under the guaranty agreement, appellants promised to guarantee to the bank "all indebtedness upon which [Air Leasing] now is or may hereafter, from time to time, become obligated to [the bank]". A continuing guaranty is to be distinguished from a guaranty which involves a specific note. *See generally, Union Planters National Bank v. Markowitz,* 468 F.Supp. 529, 535 (W.D.Tenn.1979). Whereas under the former the guarantor is obligated to pay the debts of the defaulting principal whether or not those debts are secured by collateral, under the latter the guarantor's obligation depends on the principal's performance on a specific note,

which may or may not be secured by collateral.

The majority of jurisdictions that have considered the question have held that a continuing guaranty agreement—as we do in the instant case—is not an "instrument" as defined by the UCC and therefore a guarantor is not a "party to the instrument" and may not rely on § 3–606. *E.g., American Express International Banking Corp. v. Sabet,* 30 U.S.C. Rep.Serv. (Callaghan) 271, 279 (S.D.N.Y.1980); *Union Planters, supra,* 468 F.Supp. at 535; *Halpin v. Frankenberger,* 231 Kan. 344, 348–49, 644 P.2d 452, 456 (1982); *Crown Life Ins. Co. v. LaBonte,* 111 Wis.2d 26, 42–43, 330 N.W.2d 201, 208 (1983); *Ishak v. Elgin National Bank,* 48 Ill.App.3d 614, 363 N.E.2d 159 (1977). *But see Provident Bank v. Gast,* 57 Ohio St.2d 102, 386 N.E.2d 1357 (1979) (the only case to the contrary which we have discovered).

■ Although Oklahoma has not spoken to this precise issue, it has held in another context that a guaranty agreement containing an "unconditional promise to pay all indebtedness which the debtor now is or may hereafter from time to time become obligated to pay" is not a negotiable instrument under Article 3 of the UCC. *Shepard Mall State Bank v. Johnson,* 603 P.2d 1115, 1117 (Okla.1979). We therefore believe that the Oklahoma courts, if called upon to do so, would hold that § 3–606 does not apply to the guaranty agreement in the instant case.

Appellants argue, second, that UCC § 9–207, Okla.Stat.Ann. tit. 12A, § 9–207 (1963), required the district court to instruct the jury on impairment of collateral. § 9–207 provides in part that "[a] secured party must use reasonable care in the custody and preservation of collateral in his possession" and that the "secured party is liable for any loss caused by his failure to meet any obligation imposed by the preceding subsections but does not lose his security interest." Okla.Stat.Ann. tit. 12A, § 9–207(1) and (3).

■ Courts and commentators alike recognize that a continuing guaranty not tied to collateral—such as the guaranty in the instant case—is not a security agreement and therefore the guarantor is not a "secured party" and cannot seek refuge under § 9–207. *E.g., American Express International Banking Corp. v. Sabet, supra,* 30 U.C.C. Rep.Serv. (Callaghan), at 279–80; *Union Planters, supra,* 468 F.Supp. at 534; *Halpin, supra,* 231 Kan. at 349, 644 P.2d at 456; 9 Anderson, Uniform Commercial Code § 9–207:4, at 5 (3d ed. 1985); 8 Hawkland, Lord & Lewis, Uniform Commercial Code Series § 9–207:03, at 556 (1986); *see also EAC Credit Corp. v. King,* 507 F.2d 1232, 1238 (5th Cir.1975). Again, although Oklahoma courts have not addressed the issue, we believe that they would follow the weight of authority and hold that § 9–207 does not apply to the instant case.

Appellants, in their third and fourth arguments, assert that the impairment of collateral doctrine applied to the instant case by virtue of Okla.Stat.Ann. tit. 15, § 338 (1966), and common law. § 338 provides:

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended."

Okla.Stat.Ann. tit. 15, § 338.

In their requested jury instructions, appellants cited neither § 338 nor the common law. During the charging conference as it appears in the trial transcript, appellants did not rely on § 338 or on the common law doctrine of impairment of collateral. Rather, during the entire discussion of the doctrine, court and counsel referred only to the UCC. Moreover, appellants did not refer to either § 338 or the common law when they interposed their objections to the charge after it was given. It therefore appears that appellants press their arguments based on § 338 and the common law for the first time before us. If this is the case, we of course would decline to consider such belated arguments. Fed.R. Civ.P. 51. Since the bank does not claim

that the arguments were not raised in the district court, there is the possibility that appellants made the arguments in some document not contained in the record on appeal. We therefore briefly examine appellants' arguments.

■ We hold that neither § 338 nor the common law entitled appellants to the requested instruction. Appellants concede that § 338 does nothing more than codify the common law doctrine of impairment of collateral. The case law makes it clear that appellants were not entitled to the instruction under that doctrine because a continuing guarantor—or a "guarantor of payment"—as distinguished from a guarantor of collection on a single note, is not discharged by impairment of collateral. *E.g., Paul Revere Protective Life Ins. Co. v. Weis,* 535 F.Supp. 379, 384–85 (E.D.Pa. 1981), *aff'd mem.,* 707 F.2d 1403 (3d Cir. 1982); *Walter E. Heller & Co. v. Cox,* 343 F.Supp. 519, 526 (S.D.N.Y.1972); *cf. Joe Heaston Tractor & Implement Co.,* 243 F.2d 196, 199–200 (10th Cir.1957) (*unconditional* guarantor is not released from obligation where creditor failed properly to file a security interest on collateral given by the debtor).

We hold that the court correctly refused to instruct the jury on impairment of collateral.

We have examined each of appellants' other claims and hold that they are without merit.

### III.

To summarize:

We hold that the court properly denied appellant's motion to dismiss for lack of personal jurisdiction. We also hold that the court did not abuse its discretion in denying appellants leave to amend their answer. We further hold that the court correctly refused to instruct the jury on impairment of collateral. Finally, we hold

that appellants' other claims of error on appeal are without merit.

We affirm the judgment of the district court and all of the pre-trial and post-trial rulings brought up for review.

AFFIRMED.